561 A.2d 733

**James J. BUTTERMORE and Ann Buttermore,
his wife, Appellees,**

**v.**

**ALIQUIPPA HOSPITAL; Michael Zernich, M.D.; Beaver County Sports Medicine, Inc.; Donald Kerr, R.P.T.; Michael Zernich, M.D. and Donald Kerr, R.P.T., t/d/b/a Physiotherapy and Sports Medicine Clinic; Rodney Altman, M.D. and William Dumeyer, M.D.,**

**v.**

**Frances E. MOSER.**

**Appeal of Michael ZERNICH, M.D., Donald Kerr, R.P.T., and William Dumeyer, M.D.**

Supreme Court of Pennsylvania.

Argued March 8, 1989.

Decided July 6, 1989.

326

John W. Jordan, IV, Grigsby, Gaca & Davies, P.C., Pittsburgh, Pa., for appellants.

Richard D. Gilardi, Pittsburgh, for James J. Buttermore and Ann Buttermore, his wife.

Terry C. Cavanaugh, Maria Zulick, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, for Aliquippa Hospital and Rodney Altman, M.D.

Edward J. Tocci, Aliquippa, for Frances E. Moser.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

The defendant-appellants, Aliquippa Hospital *et al.*, appeal from the Order of the Superior Court reversing the Order of the Court of Common Pleas of Beaver County.

The facts occasioning this matter occurred on December 3, 1981, when the appellee, James Buttermore, was involved in an automobile accident with Frances Moser, appellant herein. As a result he suffered lacerations of the head, a cervical injury and numbness in his hands and feet. He was taken by ambulance to the Aliquippa Hospital where he was examined and treated by the appellants. Subsequent to the initial treatment, it was determined that Mr. Buttermore sustained a fracture of his neck in the automobile accident.

On November 14, 1983, Mr. Buttermore, acting without benefit of counsel, executed a release in settlement of his claim against Frances Moser for the sum of $25,000. This release, which is essential to an understanding of this matter, provides as follows:

I/We being of lawful age, for myself/ourselves, my/our heirs, administrators, executors, successors and assigns hereby remise, release, acquit and forever discharge Frances Moser, *et al.* His/her successors and assigns, and/or his, her, their, and each of their associates, heirs, executors and administrators and any and all other persons, associations and/or corporations, whether known or unknown, suspected or unsuspected, past, present and future claims, demands, damages, actions,

third party actions, causes of action, or suits at law or in equity, indemnity of whatever nature, for or because of any matter or thing done, omitted or suffered to be done, on account of or arising from damage to property, bodily injury or death resulting or to result from an accident which occurred on or about the 3rd day of December, 1981 at or near Aliquippa, Pennsylvania for which I/We have claimed the said Frances Moser, *et al.* to be legally liable, but this release shall not be construed as an admission of such liability.

On November 30, 1983, Mr. Buttermore and his wife instituted suit, by way of complaint, against appellants, Aliquippa Hospital *et al.* alleging that the treatment rendered aggravated the injuries sustained by Mr. Buttermore in the accident and that his condition worsened as a result of their negligent treatment, thereby causing irreversible spinal cord trauma and permanent spinal nerve damage. Appellants, in their new matter, raised the release as a defense and then moved for summary judgment which was granted by the trial court. The Superior Court reversed, 368 Pa.Super. 49, 533 A.2d 481, and we granted the instant appeal.

Several issues are presented. The first is a question addressed by this Court on prior occasions, to wit: the effect to be accorded a release which by its terms discharges all claims and parties thereto even though it results in the discharge of others who have not contributed consideration toward the release. *Wolbach v. Fay,* 488 Pa. 239, 412 A.2d 487 (1980); *Estate of Bodnar,* 472 Pa. 383, 372 A.2d 746 (1977); *Emery v. Mackiewicz,* 429 Pa. 322, 240 A.2d 68 (1968); *Hasselrode v. Gnagey,* 404 Pa. 549, 172 A.2d 764 (1961).

The appellee, Mr. Buttermore, argues that it was not his intent by signing the release in question, to release the appellants from liability. He does not allege that the release was procured by fraud or that he failed to read or failed to understand the nature of its contents. This Court has stated that the effect of a release must be determined

from the ordinary meaning of its language. *Estate of Bodnar*, 472 Pa. 383, 372 A.2d 746 (1977). In *Hasselrode v. Gnagey*, 404 Pa. 549, 172 A.2d 764 (1961) this Court held that a release given to a particular individual and "any and all other persons.... whether herein named or not" was applicable to all tort-feasors despite the fact they were not specifically named. *See Wolbach v. Fay*, 488 Pa. 239, 412 A.2d 487 (1980). The operative language contained in the instant release is identical to that contained in *Hasselrode*. *Id.*

Our reasons for upholding these instruments are found in the case of *Emery v. Mackiewicz*, 429 Pa. 322, 240 A.2d 68 (1968). There Mr. Chief Justice Bell writing for the majority stated:

If such a release can be nullified or circumvented, then every written release and every written contract or agreement of any kind no matter how clear and pertinent and all-inclusive, can be set aside whenever one of the parties has a change of mind or whenever there subsequently occurs a change of circumstances which were unforeseen, or there were after-discovered injuries, or the magnitude of a releasor's injuries was unexpectedly increased, or plaintiff made an inadequate settlement. It would make a mockery of the English language and of the law to permit this release to be circumvented or held to be nugatory.

*Id.*, 429 Pa. at 326, 240 A.2d at 70.

Parties with possible claims may settle their differences upon such terms as are suitable to them. They may include or exclude terms, conditions and parties as they can agree. In doing so, they may yield, insist or reserve such right as they choose. If one insists that to settle, the matter must end then and forever, as between them, they are at liberty to do so. They may agree for reasons of their own that they will not sue each other or any one for the event in question. However improvident their agreement may be or subsequently prove for either party, their agreement, ab-

sent fraud, accident or mutual mistake, is the law of their case.

In the instant case there is no allegation of fraud, accident or mutual mistake, therefore, as between them their agreement is their law.

■ That is not to say, however, that parties may bargain away the rights of others not a party to their agreement. That question rises here because a spouse not a party to the agreement seeks to sue in her own right for loss of consortium.

Our rules of Civil Procedure require that an action for consortium must be joined in the primary action. Rule 2228(a) Pa.R.C.P. The appellants now present the settlement agreement and argue that since he released the world, they are released. In that they are correct, he cannot sue because he agreed not to. That they offered no consideration for his release is of no moment, because he included them to obtain a settlement for which he received consideration. The question is, does the wife, not a signatory to the agreement, have an independent right to sue for the injury done her. We answer that she does. The suit was commenced by her husband and she joined to enforce her rights; hence the rule of procedure was followed, the action was brought in a single action. Pa.R.C.P. 2228(a), *supra.* That the husband cannot prevail by reason of his settlement and may be dismissed is of no matter if the wife has an independent cause of action. In *Hopkins v. Blanco,* 457 Pa. 90, 320 A.2d 139 (1974), this Court recognized that independent cause of action. There we affirmed the decision of the Superior Court which held upon constitutional grounds that, "The infliction of a nonfatal injury upon one spouse now confers separate and distinct rights of action upon both spouses." *Hopkins v. Blanco,* 224 Pa.Super. 116, 121, 302 A.2d 855, 858 (1973). In so affirming this Court reasoned that, "Since the wife is her husband's equal, there is no valid justification for treating them differently in matters relating to the marital relationship. Hence, if the husband has a right to recover for the loss of consortium-so must his wife." *Id.* 457 Pa. at 93, 320 A.2d at 140.

The Equal Right provision of the constitution gives the wife what the husband had. What a husband had is of ancient lineage in law and custom. *Brown v. Philadelphia Transportation Company*, 437 Pa. 348, 263 A.2d 423 (1970); *Link v. Highway Express Lines Inc.*, 444 Pa. 447, 282 A.2d 727 (1971); *Kelly v. Mayberry Township*, 154 Pa. 440, 26 A.2d 595 (1893); *Borough of Nanticoke v. Warne*, 106 Pa. 373 (1884).

Accordingly, we affirm the order of the trial court as to its grant of the appellant's motion for summary judgment as against the husband appellee and reverse as to the wife appellee.

LARSEN, J., files a concurring and dissenting opinion in which PAPADAKOS, J., joins.

LARSEN, Justice, concurring and dissenting.

I dissent as to the majority's affirmance of the trial court's entry of summary judgment in favor of appellants, and in support thereof, cite my dissenting opinion in *Wolbach v. Fay*, 488 Pa. 239, 412 A.2d 487 (1980) (Larsen, J., dissenting). I join in the rest of the majority's opinion as it relates to wife-appellee.

PAPADAKOS, J., joins in this concurring and dissenting opinion.