778 A.2d 664

**Roberta TAYLOR, Individually and as Executrix for the Estate of Robert Lee Taylor, Deceased, Appellant,**

v.

**Byrne SOLBERG, M.D., Gerald E. Dworkin, D.O., Edmund T. Delguerico, M.D., Fitzgerald Mercy Hospital, Mercy Catholic Medical Center, Joseph V. Smiley, M.D., Jerry W. Hubsher, M.D., Donald Powers, M.D., Allen E. Meyer, M.D., Nephrology Medical Associates, Ltd., Appellees,**

**and**

**Community Dialysis Services of Landsdowne.**

Supreme Court of Pennsylvania.

Argued Jan. 30, 2001.

Decided Sept. 4, 2001.

Anthony Granato, Eugene Mattioni, Francis X. Kelly, Philadelphia, for Roberta Taylor.

James Stevens Sell, Norristown, Paulyne A. Gardner, for Allen E. Meyer & Nephrology Medical Assoc.

Andrew A. Chiris, for Community Dialysis Services.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and SAYLOR, JJ.

*OPINION*

NIGRO, Justice.

Appellant Roberta Taylor, individually and as executrix of her husband's estate, initiated a professional malpractice action against several defendants, including Community Dialysis Centers ("CDC") and Appellees Allen E. Meyer, M.D. and Nephrology Medical Associates, Ltd. ("NMA"). Appellant's husband, Robert Taylor, was diagnosed with end stage renal disease and came under the care of Dr. Meyer and other nephrologists at NMA. Mr. Taylor's medical condition required dialysis treatments, which he received at CDC beginning on October 3, 1990. CDC installed a dialysate pump that contained aluminum parts causing contamination of the dialysis solution that was used in treating numerous patients, including Mr. Taylor. Mr. Taylor suffered aluminum toxicity as a result of his exposure to the dialysate.

Prior to trial, Appellant settled with CDC for $150,000.00. Appellant and CDC entered into a settlement agreement and joint tortfeasor release ("Release") that stated in pertinent part:

3. [Appellant] reserves the right to make claim against any and every other person and organization who may be liable to [Appellant] and to claim that they, and not [CDC], are solely liable for the claimed injuries, losses and damages. In fact, claims are pending in the Action against [Appellees] and [Appellant] specifically reserves the right to proceed with the litigation against these individuals and entities.

4. For the above consideration paid, [Appellant] further agrees that the damages recoverable against non-released persons, associations, or corporations shall be reduced by the greater of the following amounts:

a. The amount of the consideration paid for this release [$150,000]; or

b. The amount of [CDC's] pro rata share (or [CDC's] percentage share of fault should it be determined that the provisions of the Comparative Negligence Act, 42 Pa.

C.S.A. § 7102 et seq. apply to this action) of responsibility for the verdict or award.[1]

. . .

7. [CDC] . . . hereby assign[s] to [Appellant] any rights [CDC] may have to contribution or indemnity or apportionment against non-released parties, if it shall be adjudicated that [CDC's] settlement payment represents more than its pro-rata or percentage share of responsibility for the verdict or award.

Settlement Agreement and Release, 2/26/96, R.R. at 33a–34a.

Following a November 1998 jury trial, a verdict was returned in favor of Appellant and against Appellees in the amount of $84,000.00. The jury found that Appellees were 20% negligent and CDC was 80% negligent.[2] The verdict was molded to reflect this allocation of liability, thus making Appellees' portion of the verdict $16,800.00 and CDC's portion $67,200.00. After reviewing the Release, the trial court subsequently reduced the verdict to $0.00. According to the trial court, the Release explicitly stated that the amount Appellant could recover against the non-settling defendants was to be reduced by the greater of the consideration paid by CDC in settlement ($150,000.00) or CDC's apportioned share of the liability ($67,200.00). Since the amount of consideration paid exceeded CDC's apportioned share of the liability, the trial court reduced the verdict by that amount. Such a reduction resulted in Appellant being entitled to recover $0.00 from Appellees as the amount of consideration paid by CDC in

1. Subparagraphs (a) and (b) represent both of the common methods of set-off, the *pro tanto* method and the *pro rata* method. Where the *pro tanto* method is used, the verdict is set-off in the dollar amount of the consideration paid by the settling tortfeasor to the plaintiff. *Baker v. ACandS*, 562 Pa. 290, 755 A.2d 664, 666 n. 1 (2000). Where the *pro rata* set-off method is used, the verdict is reduced by the settling defendant's proportionate share of the verdict. *Id.* Pursuant to the Release, Appellees therefore received the benefit of having any verdict against them reduced by whichever method resulted in the greater reduction.

2. Appellees were found to be negligent because they did not detect the negligence of CDC in installing and using the dialysate pump that caused contamination of the dialysis solution.

settlement ($150,000.00) exceeded the jury's damage award ($84,000.00).

On appeal, the Superior Court affirmed, concluding that the clear and unambiguous terms of the Release controlled the amount of the judgment recoverable by Appellant from Appellees. We subsequently granted allocatur to determine whether the lower courts properly allowed Appellees, the non-settling defendants, to invoke the provision in the Release providing that any damages recoverable should be reduced by the greater of the consideration paid ($150,000.00) or CDC's apportioned share of liability ($67,200.00).[3] For the reasons set forth below, we find that Appellees were entitled to invoke this provision, thereby reducing the amount that Appellant could recover from Appellees by $150,000.00.

In Pennsylvania, it is well settled that the effect of a release is to be determined by the ordinary meaning of its language. *Republic Ins. Co. v. Paul Davis Systems of Pittsburgh South, Inc.,* 543 Pa. 186, 670 A.2d 614, 615 (1995); *Buttermore v. Aliquippa Hospital,* 522 Pa. 325, 561 A.2d 733, 735 (1989). Parties with possible claims may settle their differences upon such terms as are suitable to them. *Buttermore,* 561 A.2d at 735. They may agree for reasons of their own that they will not sue each other, or anyone else, for the event in question. *Id.* When the parties to a release agree not to sue each other or anyone else for a given event, this can effect a discharge of others who have not contributed consideration for the release. *Id.* at 735–36. This is true even if the language of the release is general, releasing, for example, "any and all other persons" rather than specifically naming the persons released. *See Republic Ins. Co.,* 670 A.2d at 615. However improvident the release may be or subsequently prove to be for either party, their agreement, absent fraud, accident or mutual mistake, is the law of their case. *Butter-*

---

**3.** As the question before us is one of law, our scope of review is plenary. *Phillips v. A–Best Products Co.,* 542 Pa. 124, 665 A.2d 1167, 1170 (1995). Our standard of review requires us to examine the lower court's ruling for an abuse of discretion or error of law. *See Baker,* 755 A.2d at 667 n. 4.

*more*, 561 A.2d at 735. If such a release can be nullified or circumvented, then every written release and every written agreement of any kind, no matter how clear and pertinent, can be set aside whenever one of the parties changes its mind or the injured party receives an inadequate settlement. *Id.* (citation omitted).

■ In the instant case, the language of the Release was clear and unambiguous regarding the reduction of damages that Appellant could collect from non-released parties. The Release, which was freely adopted by Appellant,[4] clearly dictated that the damages that Appellant could recover from Appellees was reduced by the *greater* of 1) the consideration that CDC paid for the Release or 2) the amount of CDC's *pro rata* share of liability. Given these clear terms, the trial court properly reduced the verdict.

Appellant argues, however, that the Release is of no consequence to Appellees because they were not parties to the Release. According to Appellant, the obligations of Appellees are determined by the jury's verdict, and the amount of consideration paid for the Release is irrelevant to Appellees' obligation to pay their proportional share of the judgment. Relying on this Court's decision in *Charles v. Giant Eagle Markets*, 513 Pa. 474, 522 A.2d 1 (1987), Appellant claims that the only thing resolved by the Release is the amount of money that CDC, the settling tortfeasor, was required to pay. We disagree.

In *Charles*, the plaintiff and defendant Giant Eagle Markets, Inc. ("Giant Eagle") reached a settlement agreement prior to trial. Giant Eagle paid the plaintiff $22,500.00, and the plaintiff executed a release which provided that any verdict the plaintiff obtained would be set-off by Giant Eagle's *pro rata* share of the verdict.[5] The matter went to trial against

4. Appellant has never challenged the validity of the Release due to fraud, accident or mutual mistake.

5. The release specifically provided that any recovery that the plaintiff obtained "against any ... corporation other than Giant Eagle Markets, Inc .... shall be reduced to the extent of the pro rata share of ... Giant Eagle." *Charles*, 522 A.2d at 5.

the remaining defendant, Stanley Door ("Stanley"), and the jury returned a verdict in favor of the plaintiff in the amount of $31,000.00. The jury found Giant Eagle to have been 60% negligent and Stanley to have been 40% negligent. Stanley argued that the portion of the verdict for which it was responsible, $12,400.00 (40% of $31,000.00), should be reduced by $3,900.00 (the amount by which Giant Eagle's settlement payment exceeded its 60% share of the verdict). According to Stanley, if the plaintiff received Stanley's full $12,400.00 share of the verdict, then the plaintiff would receive a $3,900.00 windfall, i.e., $3,900.00 more for his injury than the jury had valued it to be.

On appeal to this Court, we reviewed the issue of whether, under the Comparative Negligence Act[6] and the Uniform Contribution Among Tortfeasors Act ("UCATA"),[7] a non-settling tortfeasor is relieved of responsibility for payment of his proportionate share of damages to the extent that the consideration paid by a settling tortfeasor exceeds the settling tortfeasor's proportionate share of damages. We concluded that the sound policy of encouraging settlements as well as the "proper interpretation of the pertinent statutory authority" compelled a holding that the non-settling tortfeasor was required to pay his full *pro rata* share. *Charles*, 522 A.2d at 2. The Court determined that in windfall situations such as that presented in *Charles*, the plaintiff, rather than the non-settling tortfeasor, should be the one to benefit.

█ Although the Court in *Charles* determined that the plaintiff should receive the benefit of a windfall under the circumstances presented in that case, we disagree with Appellant's assertion that the decisions of the lower courts in the instant case depart from our decision in *Charles*. Unlike the instant case, *Charles* did not involve a joint tortfeasor release that contains clear and unambiguous language specifically

6. 42 Pa.C.S. § 7102.

7. 42 Pa.C.S. §§ 8321–8327. The UCATA is a comprehensive act that dictates the effect of a release as to other tortfeasors, the method for computing set-off, and under what circumstances an action in contribution is to be allowed.

reducing the amount of damages recoverable against non-released parties. The release executed in *Charles* merely provided that the plaintiff's recovery was limited by the *pro rata* share of Giant Eagle's liability, and did not contain language similar to that voluntarily adopted by Appellant in the instant case. Here, in contrast to *Charles*, the clear and unambiguous language of the Release specifically provided that Appellees, the non-settling defendants, were to obtain the benefit of the Release. As the Court in *Charles* noted, a release by the plaintiff of one joint tortfeasor does not discharge the other tortfeasors, *unless the release so provides. Id.* at 4 (citing 42 Pa.C.S. § 8326)(emphasis added). Accordingly, the *Charles* Court found that neither the public policy of encouraging voluntary settlements nor the statutory authority of the UCATA impairs the ability of a plaintiff and a settling party to enter into a binding contract which benefits a third party, such as the Release in the instant case.

Appellant also relies on this Court's recent decision in *Baker v. ACandS*, 562 Pa. 290, 755 A.2d 664 (2000), for the proposition that in a windfall situation it is the plaintiff, rather than the non-settling tortfeasor, who is to be favored. In *Baker*, the plaintiff signed a *pro tanto* release with defendant Johns–Manville Corporation and a *pro rata* release with three other defendants. The only remaining defendant was ACandS, against whom the plaintiff proceeded solely on the theory of strict liability. The issue before this Court was which method of set-off, *pro tanto* or *pro rata*, should be applied when determining how much of the Manville Personal Injury Settlement Trust's portion of the verdict that ACandS, the only non-settling defendant, could set-off.[8] We held that ACandS was liable for its share of the verdict *plus* the shortfall between the Manville Trust's share of the verdict and the settlement amount. *Id.* at 672. We found that in a strict liability case where a settling defendant has executed a *pro tanto* release,

---

**8.** The Manville Trust was created in 1988 to pay all health claims brought against the Johns Manville Corporation as a result of asbestos exposure. *See Baker,* 755 A.2d at 666. The Manville Trust Disposition Process controls the allocation of funds to persons with claims against the Manville Trust. *Id.* at 666 n. 2.

and the amount of consideration paid for the release is less than what the jury ultimately determines to be the settling defendant's share of liability, the non-settling defendant must pay the plaintiff for this shortfall but may sue the settling defendant in contribution. *Id.* at 669 (citing 42 Pa.C.S. § 7102; 42 Pa.C.S. §§ 8324(c) & 8327). In so finding, we enforced the clear language of the *pro tanto* release signed by the plaintiff and the Manville Trust. *Id.* at 666, 672.

Appellant's reliance on *Baker* is misplaced. *Baker* involved a strict liability claim and the complexity of the Manville Trust Disposition Process, a factual scenario clearly distinguishable from the instant case. In addition, the Court in *Baker* decided the issue of which method of set-off to use under the unique circumstances of that case. We did not address the issue of whether a non-settling defendant could invoke a provision in a release that reduced the plaintiff's judgment by the greater of the consideration paid for the release or the amount of the settling defendant's *pro rata* share. Finally, *Baker* does not, as Appellant seems to suggest, mandate that plaintiffs must always prevail in windfall situations. In fact, *Baker* supports our decision today because in *Baker*, this Court applied the clear language of the *pro tanto* release at issue there, just as we are applying the clear language of the release at issue in the instant case. *See id.* at 666, 672.[9]

Despite Appellant's assertions to the contrary, the affirmation of the clear and unambiguous language of the Release in the instant case is not a departure from the applicable law of this Commonwealth. Appellant signed the Release, the terms of which the trial court carried out precisely. While Appellant may not have contemplated the final result when she executed the Release, it is clear that in the absence of fraud, accident or

9. Appellant also argues that this case is on "all fours" with *Walton v. Avco Corp.*, 530 Pa. 568, 610 A.2d 454 (1992), where this Court required a strict liability joint tortfeasor to pay its 50% share despite the fact that the plaintiff settled with the other joint tortfeasor prior to trial for an amount higher than the jury's verdict, resulting in a windfall for the plaintiff. *Walton*, however, involved a distinct scenario where the settling defendant was attempting to sue the non-settling defendant in contribution and did not involve a dispute over the amount of set-off. Thus, *Walton* does not impact this case.

mutual mistake, the verdict was properly molded in accordance with the Release. Based on the plain meaning of the language in the Release, we hold that Appellees were entitled to invoke the Release provision that reduced Appellant's recovery by the greater of the consideration paid by CDC for the release or CDC's *pro rata* share of fault. Accordingly, the order of the Superior Court is affirmed.

Justice NEWMAN did not participate in the decision or consideration of this matter.