**Black v. Jamison**

C.P. of Franklin County, no. 2001–1609.

*Amy L. Coryer-Host,* and *Scott B. Cooper,* for plaintiffs.
*James G. Nealon III,* for defendant Jamison.
*Dennis J. Bonetti,* for defendant Myers.
*Steven C. Gould,* for the Commonwealth.

VAN HORN, *J.,* March 16, 2004—

## FACTUAL HISTORY

(1) Plaintiffs' cause of action arose out of an automobile accident occurring on May 15, 1999, at the intersection of Lincoln Way East (State Route 30) and Rocky Mountain Road North (State Route 233), Greene Township, Franklin County, Pennsylvania.

(2) The automobile accident involved vehicles driven by decedent, John R. Myers, and defendant Todd L. Jamison.

(3) Eric L. Black was a front-seat passenger in the automobile operated by decedent, John R. Myers, and owned by defendant Diane E. Myers.

## PROCEDURAL HISTORY

(1) On May 9, 2001, plaintiffs, Ellen L. Black, as administrator and executrix of the estate of Eric L. Black, and on her own behalf and Randy L. Black, commenced the above-captioned action against several defendants, including the Commonwealth of Pennsylvania, Department of Transportation.

(2) On March 22, 2002, plaintiffs executed a document entitled, "Release and settlement agreement" in their case against State Farm Insurance Company in the Court of Common Pleas of Adams County, no. 00-31-02. Said case originated from the same set of facts that gave rise to the present action. The case in Adams County is captioned as follows: *Ellen L. Black, as Administrator and Executrix of the Estate of Eric L. Black, and on her own behalf and Randy L. Black v. State Farm Insurance Company.*

(3) On February 19, 2003, PennDOT filed its answer and new matter to plaintiffs' complaint in the Franklin County matter affirmatively asserting that plaintiffs' action is barred pursuant to the doctrine of release.

(4) On October 13, 2003, PennDOT served on plaintiffs a request for production of documents. In response, plaintiffs provided PennDOT with the release of March 22, 2002.

(5) On December 3, 2003, PennDOT filed a motion for summary judgment claiming that the release of March 22, 2002, is a general release.

(6) On December 16, 2003, plaintiffs filed their answer and new matter motion for sanctions to PennDOT's motion for summary judgment.

(7) On January 5, 2004, PennDOT filed its response in opposition to plaintiffs' new matter motion for sanctions.

(8) On January 20, 2004, PennDOT filed its brief in support of its motion for summary judgment.

(9) On January 23, 2004, plaintiffs filed their brief in opposition to PennDOT's motion for summary judgment and in support of their motion for sanctions.

(10) On February 13, 2004, PennDOT filed its brief in opposition to plaintiffs' motion for sanctions.

(11) On March 4, 2004, oral argument was heard solely on PennDOT's motion for summary judgment as PennDOT objected to having the motion for sanctions heard at this time.

## DISCUSSION

Before the court is PennDOT's motion for summary judgment and plaintiffs' countermotion for sanctions.[1] In regards to the motion for summary judgment, the issue is whether the release executed by plaintiffs pursuant to their case against State Farm Insurance Company is a general release. In regards to the countermotion for sanctions, the issue is twofold: (1) whether PennDOT filed for summary judgment without any basis in law or fact, and (2) whether PennDOT was dilatory, obdurate, and vexatious in failing to provide the police incident numbers requested and for filing what plaintiffs assert was a frivolous motion for summary judgment.

---

1. In the interest of judicial economy, the court will decide the countermotion for sanctions on the parties' briefs as we do not see the need for an evidentiary hearing.

## 1. *Motion for Summary Judgment*

Under Pennsylvania Rules of Civil Procedure, any party may move for summary judgment as a matter of law, "[a]fter the relevant pleadings are closed, but within such time as not to unreasonably delay trial . . . (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report." Pa.R.C.P. 1035.2. "A material fact is one that directly affects the outcome of the case." *Kuney v. Benjamin Franklin Clinic,* 751 A.2d 662, 664 (Pa. Super. 2000).

PennDOT claims it is entitled to summary judgment because plaintiffs, by signing the release, released, acquitted and discharged PennDOT from any and all liability arising from the May 15, 1999 accident.

In construing a release, the court is guided by general contract principles. *Martin v. Donahue,* 698 A.2d 614, 616 (Pa. Super. 1997). In *Martin,* the court says that it "must look to the terms of the release, both clear and ambiguous, and examine the document to determine the intent of the parties." *Id.* citing *Harrity v. Medical College of Pennsylvania Hospital,* 439 Pa. Super. 10, 653 A.2d 5 (1994).

The court goes on to say the following:

"Since we are bound to give deference to the written word when it is clear, we will not re-write a contract. . . . However, when the language is ambiguous, and the court cannot readily determine the intentions of the parties, it may allow oral testimony to show the intent of the parties. . . . Moreover, a written contract must be examined as a whole; we glean the intent of the parties through an

examination of the entire document. . . . At times, in order to ascertain the intent of the parties, it is necessary to examine the circumstances through affidavits or testimony of the involved parties. . . ." *Id.* (citations omitted)

PennDOT believes *Buttermore v. Aliquippa Hospital,* 522 Pa. 325, 561 A.2d 733 (1989), controls the present case. In *Buttermore,* the plaintiff was involved in a vehicle accident and received treatment from the defendant hospital. *Id.* at 327, 561 A.2d at 734. The plaintiff signed a release in settlement of his claim against the driver of the other vehicle, releasing "any and all other persons, associations and/or corporations, whether known or unknown, suspected or unsuspected, past, present and future claims . . . resulting or to result from [the motor vehicle accident]." *Id.* at 327-28, 561 A.2d at 734. The plaintiff then filed an action against the defendant. The defendant raised the release as a defense and then moved for summary judgment, which the trial court granted. *Id.* at 328, 561 A.2d at 735.

The Pennsylvania Supreme Court reversed the Superior Court and affirmed the trial court when, after looking at the ordinary meaning of the language of the release, the Supreme Court determined that "[h]owever improvident [the parties] agreement may be or subsequently prove for either party, their agreement, absent fraud, accident or mutual mistake, is the law of their case." *Id.* at 329-30, 561 A.2d at 735.

PennDOT also cites *Republic Insurance Co. v. Paul Davis Systems of Pittsburgh South Inc.,* 543 Pa. 186, 670 A.2d 614 (1995),[2] in support of its claim. In *Republic,* the in-

---

2. PennDOT cites *Taylor v. Solberg,* 566 Pa. 150, 778 A.2d 664 (2001), as a third case in support of its action. *Taylor* contains a summary of the law as set forth in *Buttermore* and *Republic.*

sured sued Republic, his insurer, and a release was subsequently executed. *Id.* Republic then tried to sue a third party, PDS, and in its defense PDS claimed the release barred Republic's claim. *Id.* at 188, 670 A.2d at 615. The trial court granted PDS's motion for summary judgment. *Id.*

The Pennsylvania Supreme Court reversed the Superior Court and affirmed the trial court's granting of summary judgment, stating:

"The release in the present case was clear, unambiguous, and broad in scope. . . .

"Given the language releasing 'all other persons' from 'any and all actions' of 'whatsoever kind or nature,' . . . the decision of the Superior Court that the release did not apply to tort claims against PDS was without basis. Indeed, it would be difficult to conceive of language more clear, pertinent, and all-inclusive. The trial court, applying the ordinary meaning of the release, properly concluded that it was an effective bar to Republic's action." *Id.* at 189-90, 670 A.2d at 615. (footnote omitted)

PennDOT believes that the release presently at issue is substantially similar to the releases at issue in the above two cases. Therefore, PennDOT claims that the court need only examine the ordinary language of the release which is clear and unambiguous in determining the intent of the parties. In support of its argument, PennDOT quotes the following paragraph from the release:

"[Plaintiffs] release, acquit and discharge State Farm Mutual Automobile Insurance Company, their predecessors, heirs, successors and assigns, their officers, directors, owners, employees and agents, and all other persons, firms, corporations, associations, partnerships,

affiliates, subsidiaries and entities whatsoever (herein-after collectively referred to as 'releasees'), of and from any and all actions, causes of actions, claims, demands damages, costs, loss of services or use, expenses and compensation of whatever kind or nature on account of or in any way growing out of any and all personal injury, death and/or property damage and consequences thereof, and for any damages which may develop at some time in the future, and for any and all unforeseen developments arising from known or unknown injuries or property damage, including all claims resulting or to result from an accident which occurred on or about May 15, 1999, at the intersection of State Route 0233 (Rocky Mountain Road North) and State Route 0030 (Lincoln Way East) in Greene Township, Franklin County, Pennsylvania." See release at page 1.

PennDOT further claims that the release states that the plaintiffs completely read, fully understood, and voluntarily accepted the terms of the release, and understood that the release applied to "any and all claims" on account of the damages and losses from the May 15, 1999 accident. In that respect, the release states the following:

"Randy L. Black and Ellen L. Black, individually, as the administrator and executrix of the estate of Eric L. Black, hereby declares that the terms of this release and settlement agreement have been completely read; that they have had the opportunity to discuss the terms of this settlement with legal counsel of their choice; and that said terms are fully understood and voluntarily accepted for the purpose of making a full and final compromise of any and all claims on account of the damages and losses mentioned above and further for the express

purpose of precluding forever and further or additional suits by themselves or the estate of Eric L. Black arising out of the aforesaid claims." See release at pages 2-3.

PennDOT also directs the court's attention to the fact that the release states that "there are no written or oral understandings, or agreements, directly or indirectly connected with this release and settlement that are not incorporated herein." See release at page 2.

The language contained in the first paragraph quoted above is substantially similar to the language contained in the releases at issue in both *Buttermore* and *Republic*. If the release at issue was made up of only the language of the first paragraph or even if the release was made up of all the language quoted above then *Buttermore* and *Republic* would control as the ordinary language would clearly convey the intent of the parties. However, the following is additional language in the release which cannot be ignored:

"It is understood and agreed that this settlement is being offered as the available underinsured coverage under a policy [sic] issued by releasee, State Farm, to releasor, Randy L. Black, and that said releasees deny liability and intend merely to finalize and avoid litigation and buy their peace." See release at page 2.

In claiming that the release is not a general release, plaintiffs assert several theories for the court to consider. Plaintiffs' first theory is similar to PennDOT's claim that the ordinary language of the release is clear and unambiguous. Plaintiffs, of course, believe that it is clear from a reading of the whole release that the intent of the parties was to limit the release to State Farm Insurance Company. In support of their claim that the limiting language

of the release is clear on its face, plaintiffs cite *Martin,
supra.*

In *Martin,* a release was signed specifically naming the
defendant with whom the plaintiff intended to settle. *Id.* at
615. The plaintiff subsequently sued a doctor who performed
surgery on him after his work-related accident. The doctor
claimed the release signed with the named defendant also
released him from liability. *Id.* The release states that it per-
tains to "any and all entities who are or may be determined
to be liable for 'the claims referred to [*In the Matter of Martin
v. Heydt Plaster and Stucco Inc.,* Chester County Court of
Common Pleas, no. 91-01797].' " *Id.* at 617. The court said,
"a reading of the full text of the release illuminates the fal-
lacy of [the doctor's] position, since the language of the
document limited the discharge of liability to *named* par-
ties. *Buttermore* is easily distinguishable as there was no
limiting language." *Id.* (emphasis in original)

The court finds that the language of the release in ques-
tion does not limit the scope of the release in as clear a
manner as the language of the release in *Martin.* However,
the release presently at issue, in its first paragraph, contains
language consistent with a general release but in its third
paragraph specifies that the parties to the settlement, which
then resulted in the release, are State Farm Insurance Com-
pany and Randy L. Black. Therefore, while the court can-
not rule in the plaintiffs' favor on a reading of the release
itself, the court does agree with plaintiffs' second theory in
support of its claim that the release is not a general release.
Plaintiffs' second theory[3] is that the first and third para-

---

3. Plaintiffs presented a third theory to the court, which the court
will not address as the issue can be resolved based on the theories now
before it.

graphs of the release create an ambiguity, thus allowing the court to look outside the document to determine the intent of the parties to the release. *Id.* at 616.

The court reviewed the following information in determining the intent of the parties after finding the language of the release to be ambiguous: the affidavits provided by the various parties involved in the settlement; the petition to compromise, settle, and discontinue a minor's claim; and the documents provided by plaintiffs at oral argument. The court also considered the fact that two actions, which arose from the same set of facts, were pending at the same time, which is a procedural distinction from the facts of the previously cited cases.

The court examined the affidavits provided by the various parties involved in the settlement.[4] The attorney for plaintiffs, the plaintiffs, and an employee of State Farm all said, "[t]his settlement was settlement of a claim for underinsured motorist benefits *only*." The attorney who drafted the release for State Farm stated, "[m]y understanding as to the intent of all parties to this release was to release any claims for the available underinsured motorist coverage against State Farm."

Clearly, all the parties involved in the settlement meant only to release State Farm Insurance Company from any further liability.

The court also reviewed the petition to compromise, settle and discontinue a minor's claim.[5] This document contains the following language:

---

4. The affidavits are attached to plaintiffs' answer to PennDOT's motion for summary judgment as exhibits B, C, D, E.

5. The petition to compromise, settle and discontinue a minor's claim is attached to plaintiffs' answer to PennDOT's motion for summary judgment as exhibit F.

"State Farm Insurance has offered to pay the policy limits of $60,000 in full and final satisfaction of petitioner's claim for underinsured motorist coverage for the May 15, 1999 automobile accident that resulted in the death of petitioner's son, Eric L. Black. Petitioners have accepted the offer of State Farm Insurance Company to pay the policy limits of $60,000 for underinsured motorist coverage pending court approval."

This language clearly defines the parties to the settlement, the purpose of the settlement and the amount of the settlement, which all serve as evidence that the settlement between plaintiffs and State Farm Insurance Company was intended by the parties to be solely between them.

At oral argument, counsel for plaintiffs provided the court with several documents from their files regarding the issue of settlement. The court has reviewed said documents and most importantly noted the following language in a letter from State Farm Insurance Company's counsel: "I have been provided a copy of the proposed petition to compromise, settle and discontinue a minor's claim regarding State Farm's tender of the policy limits for a full and final satisfaction of any claims the decedent or his parents may have against State Farm relative to the May 15, 1999 motor vehicle accident."

Clearly, counsel for State Farm Insurance Company understood the limited purpose of the petition to compromise, settle and discontinue a minor's claim.

In determining the intent of the parties, the court also took into consideration the fact that in the present case the plaintiffs had two actions pending at the same time. The action in Adams County named State Farm Insur-

ance Company as the defendant and the action in Franklin County included PennDOT as one of the defendants. Plaintiffs were discussing settlement with PennDOT on November 20, 2003, in the amount of $464,000, $250,000[6] of which they were asking come from PennDOT. This serves as evidence that plaintiffs did not intend for the release of State Farm Insurance Company on March 22, 2002, for the amount of $60,000, to release the defendants of a completely separate legal action in Franklin County from which they were expecting a much larger settlement.

## 2. *Motion for Sanctions*

The second issue before the court is twofold: (1) whether PennDOT filed for summary judgment without any basis in law or fact, and (2) whether PennDOT was dilatory, obdurate, and vexatious in failing to provide the police incident numbers requested and for filing what plaintiffs assert was a frivolous motion for summary judgment.

The court finds that PennDOT's motion for summary judgment does have basis in law and in fact. PennDOT based its claim on *Buttermore, supra; Republic, supra;* and *Taylor, supra.* PennDOT raised genuine legal issues regarding how the court should interpret the intent behind a release.

Section 2503(7) in the Judicial Code entitles a participant in litigation to receive an attorney fee as a sanction against another participant for "dilatory, obdurate, or

---

6. Said letter is attached to plaintiffs' answer to PennDOT's motion for summary judgment as exhibit H.

vexatious conduct during the pendency of a matter." 42 Pa.C.S. §2503(7). While the court has expressed its concern with PennDOT's apparent lack of professionalism with regards to its failure to respond to both informal and formal requests for information from plaintiffs, its conduct did not rise to the level of dilatory, obdurate or vexatious.

Plaintiffs claim PennDOT's motion for summary judgment was frivolous because the release was clearly not a general release. However, as the court has determined above, the nature of the release was not clear on its face. Furthermore, plaintiffs claim that because PennDOT had the affidavits from all the parties involved in the settlement between plaintiffs and State Farm Insurance Company, PennDOT was aware of the intent of the parties. However, PennDOT had every right to bring its motion for summary judgment without considering anything but the release itself as the threshold question for the court is whether the release is ambiguous on its face. It furthermore does not appear that PennDOT filed its motion for summary judgment for purposes of delay or annoyance. Thus, by filing the motion for summary judgment, PennDOT's conduct was not dilatory, obdurate or vexatious.

## CONCLUSION

PennDOT's motion for summary judgment is denied. The court determines the release is ambiguous on its face and thus it may examine the circumstances surrounding the release to come to a conclusion as to the intent of the parties. The court determines that plaintiffs intended to release only State Farm Insurance Company pursuant to the release of March 22, 2002.

Plaintiffs' countermotion for sanctions is denied. First, the court determines PennDOT did have basis in law and fact to bring its motion for summary judgment. Furthermore, PennDOT's conduct in bringing the motion for summary judgment was not dilatory, obdurate or vexatious. Second, the court determines that while PennDOT's behavior in failing to respond to both formal and informal requests for information was lacking in professional courtesy, its behavior did not rise to the level of dilatory, obdurate or vexatious.

## ORDER

And now, March 16, 2004, this matter having come before the court on the defendant, Commonwealth of Pennsylvania, Department of Transportation's motion for summary judgment and plaintiffs' countermotion for sanctions, the court having considered the relevant documents and having heard oral argument hereby orders the following:

(1) Defendant, Commonwealth of Pennsylvania, Department of Transportation's motion for summary judgment is denied.

(2) Plaintiffs' countermotion for sanctions is denied.