# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

| | | |
|---|---|---|
| MICHELE VALENTINO, AS ADMINISTRATRIX OF THE ESTATE OF DEREK VALENTINO, DECEASED, AND MICHELE VALENTINO, IN HER OWN RIGHT, | : : : : : : | No. 17 EAP 2017 <br><br> Appeal from the Judgment of Superior Court entered on November 15, 2016 at No. 3049 EDA 2013 affirming the Order entered on September 30, 2013 |
| Appellant | : : | in the Court of Common Pleas, Philadelphia County, Civil Division at No. 1417 April Term, 2012. |
| v. | : : : : : | |
| PHILADELPHIA TRIATHLON, LLC, | : : | |
| Appellee | : | ARGUED: May 15, 2018 |

## OPINION IN SUPPORT OF AFFIRMANCE

**JUSTICE BAER**                                        **DECIDED: June 18, 2019**

This Court granted allocatur to determine whether an express assumption of the risk agreement executed by triathlon participant Derek Valentino ("Decedent") serves as a defense to a wrongful death claim commenced against the Philadelphia Triathlon, LLC ("Triathlon") by Decedent's heir ("Appellant"), who was not a signatory to the agreement.[1] The Superior Court held that Decedent's express assumption of the risks inherent in participation in the sporting event eliminated Triathlon's duty of care, thereby rendering Triathlon's conduct non-tortious. Absent tortious activity, the Superior Court concluded that the wrongful death claim brought by Decedent's heir could not succeed as a matter

---

[1] We also granted allowance of appeal to determine whether to abolish the assumption of the risk doctrine under circumstances where the Comparative Negligence Act does not expressly permit its application. Appellant, however, waived this issue by not challenging the overall viability of the assumption of the risk doctrine in the lower tribunals. *See* Pa.R.A.P. 302(a) (providing that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

of law because the Wrongful Death Act premises recovery upon "the wrongful act or neglect or unlawful violence or negligence of another." 42 Pa.C.S. § 8301. Accordingly, the Superior Court affirmed the trial court's order granting summary judgment in favor of Triathlon. For the reasons set forth herein, we would affirm the judgment of the Superior Court and adopt its astute legal analysis.

Preliminarily and as explained in more detail *infra*, we respectfully note that the Opinions in Support of Reversal (both hereinafter collectively referred to as "OISR") ignore the issue for which we granted allocatur and, instead, attempt to reverse the judgment of the Superior Court on grounds not encompassed by this appeal. Specifically, the OISR would *sua sponte* hold that express assumption of the risk agreements are void and unenforceable in violation of public policy in cases involving claims brought pursuant to the Wrongful Death Act, 42 Pa.C.S. § 8301. The OISR reaches this conclusion notwithstanding that no party to this appeal challenges the validity of the agreement on public policy grounds or otherwise. We decline to engage in this judicial overreaching and proceed to address the merits of the issue before us.

We begin with a brief recitation of the facts. In 2010, Triathlon organized a multi-sport-event, comprised of swimming in the Schuylkill River, cycling for more than fifteen miles, and running for more than three miles. To compete in the event, each participant was required to register, pay a fee, and execute electronically a liability waiver agreement that included an assumption of the risk provision ("Agreement"). On January 24, 2010, Decedent complied with these requisites by electronically registering as a participant in the triathlon and executing the Agreement.

The executed Agreement stated that Decedent understood "the physical and mental rigors associated with triathlon," and "that running, bicycling, [and] swimming . . . are inherently dangerous and represent an extreme test of a person's physical and mental

limits." Appellee's Motion for Summary Judgment Ex. G, dated Aug. 5, 2013. The Agreement further acknowledged Decedent's understanding that "participation involves risks and dangers which include, without limitation, the potential for serious bodily injury, permanent disability, paralysis and death . . . and other undefined harm or damage which may not be readily foreseeable[.]" *Id.* The Agreement provided that Decedent was aware "that these Risks may be caused in whole or in part by [his] own actions or inactions, the actions or inactions of others participating in the Event, or the acts, inaction or negligence of [the Triathlon]." *Id.*

Germane to this appeal, the Agreement stated that Decedent "**expressly assume[d] all such Risks and responsibility for any damages, liabilities, losses or expenses**" resulting from his participation in the event. *Id.* (emphasis added). The Agreement also included a provision stating that Decedent further agreed that if he or anyone on his behalf "makes a claim of Liability against any of the Released Parties, [Decedent] will indemnify, defend and hold harmless each of the Released Parties from any such Liability which any [sic] may be incurred as the result of such claim." *Id.*[2]

The triathlon took place on June 26, 2010. At approximately 8:30 a.m., Decedent entered the Schuylkill River to begin the first segment of the race. Tragically, Decedent never completed the swimming portion of the competition. Divers retrieved Decedent's body from the river the next day after he presumably drowned while participating in the triathlon. On April 12, 2012, Decedent's widow, Michele Valentino, both in her own right and as administratrix of her husband's estate (referred to as "Appellant" herein), asserted

---

[2] In block capital lettering above the signature line, the Agreement stated that Decedent's acceptance of the Agreement confirmed that he read and understood its terms, that he understood that he would surrender substantial rights, including the right to sue, and that Decedent signed the agreement freely and voluntarily. *Id.* This final paragraph went on to state that acceptance of the Agreement constituted "a complete and unconditional release of all liability to the greatest extent allowed by law." *Id.*

wrongful death and survival claims against various defendants, including Triathlon. Only the wrongful death claim is at issue in this appeal. Appellant subsequently amended her complaint and the defendants filed preliminary objections. On July 27, 2012, the trial court sustained the defendants' preliminary objections and struck all references in the complaint that referred to outrageous acts, gross negligence, recklessness, and punitive damages, holding that these averments were legally insufficient as the facts alleged demonstrated only ordinary negligence. The trial court further struck particular paragraphs of the amended complaint on grounds that they lacked specificity.

In December of 2012, following the various defendants' filing of an answer and new matter, the defendants moved for summary judgment, asserting the Agreement as an affirmative defense. The trial court denied summary judgment, finding that questions of material fact remained regarding the existence of the Agreement. Appellant thereafter stipulated to the dismissal of all defendants except Triathlon. Once discovery was completed, Triathlon again moved for summary judgment. Concluding that the evidence at that point in the proceedings demonstrated that the Agreement was among Decedent's possessions and was valid and enforceable, the trial court granted summary judgment in favor of Triathlon.

Prior to the trial court issuing its Pa.R.A.P. 1925(a) opinion explaining its rationale for granting summary judgment in favor of Triathlon, the Superior Court, in an unrelated matter, decided the case of *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651 (Pa. Super. 2013), which held that a non-signatory wrongful death claimant was not bound by an arbitration agreement signed by a decedent.[3] *Id.* at 663. On April 14, 2012, shortly after

_____

[3] In *Pisano*, the decedent had executed an agreement at the time of his admission to a long-term care nursing facility ("Extendicare"), providing that any dispute arising from the agreement would be resolved by binding arbitration. *Id.* at 653. The decedent's son subsequently commenced a wrongful death action against Extendicare in the trial court. Extendicare filed preliminary objections, seeking to have the case dismissed for lack of

*Pisano* was decided, the trial court issued its Pa.R.A.P. 1925(a) opinion in this matter and urged the Superior Court to vacate its order granting summary judgment in favor of Triathlon based on that decision.

Relying upon *Pisano*, Appellant argued to the Superior Court that Decedent's Agreement with Triathlon does not apply to her as a non-signatory and, thus, has no preclusive effect upon her wrongful death claims asserted against Triathlon. In response, Triathlon contended that Decedent's assumption of the risks inherent in participation in the event relieved its duty of care, thereby rendering Triathlon's conduct non-tortious as a matter of law. The Triathlon maintained that, absent tortious activity, a wrongful death claim could not succeed because the Wrongful Death Act premises recovery upon "the wrongful act or neglect or unlawful violence or negligence of another." 42 Pa.C.S. § 8301.

Initially, on December 30, 2015, a divided panel of the Superior Court reversed the trial court's order in part, holding that under *Pisano*, Decedent's Agreement was not applicable to Appellant because she was not a signatory to the contract. The Superior Court thereafter granted *en banc* argument and withdrew its panel decision.

On November 15, 2016, an *en banc* Superior Court affirmed the trial court's order granting Triathlon summary judgment in a published decision. *Valentino v. Phila.*

---

subject matter jurisdiction. The trial court overruled Extendicare's preliminary objections, holding that a wrongful death action is a creature of statute and is independent of the right of action of the decedent's estate. *Id.* at 654. Thus, the trial court concluded, the decedent's agreement to arbitrate disputes did not preclude the wrongful death claim brought by the decedent's son. *Id.*

The Superior Court affirmed. The court reasoned that pursuant to 42 Pa.C.S. § 8301, a wrongful death action is not derivative of the decedent's claim, but is a separate and distinct right of action belonging to statutory claimants to compensate them for damages they sustained as a result of the decedent's death. *Id.* at 656-8. The *Pisano* court concluded that the arbitration agreement was not binding on the decedent's son because he was not a party to that agreement; thus, the trial court was correct in refusing to compel arbitration.

*Triathlon, LLC*, 150 A.3d 483 (Pa. Super. 2016). Preliminarily, the Superior Court acknowledged that because a wrongful death claim is not derivative of a decedent's cause of action, "a decedent may not compromise or diminish a wrongful death claimant's right of action without consent." *Id.* at 493. Nevertheless, the Superior Court went on to hold that "a third-party wrongful death claimant is subject to substantive defenses supported by the decedent's actions or agreements where offered to relieve the defendant, either wholly or partially, from liability by showing that the defendant's actions were not tortious." *Id.*

The Superior Court found that the available substantive defense here was Decedent's contractual assumption of the risks inherent in participation in the triathlon. The assumption of the risk doctrine, set forth in Section 496A of the Restatement Second of Torts, provides that "[a] plaintiff who voluntarily assumes a risk of harm arising from the negligent or reckless conduct of the defendant cannot recover for such harm." Restatement Second of Torts, § 496A. Comment c(1) to Section 496A provides that the express assumption of the risk "means that the plaintiff has given his express consent to relieve the defendant of an obligation to exercise care for his protection, and agrees to take his chances as to injury from a known or possible risk." *Id.* at cmt. c(1). Notably, the Comment goes on to state that "[t]he result is that the defendant, who would otherwise be under a duty to exercise such care, is relieved of that responsibility, and is no longer under any duty to protect the plaintiff." *Id.*

Pennsylvania case law illustrates that one's assumption of the risks inherent in a particular activity eliminates the defendant's duty of care. *See Hughes v. Seven Springs Farm Inc.,* 762 A.2d 339, 343 (Pa. 2000) (explaining that under Section 496A of the Restatement Second of Torts, where the plaintiff assumes the risk of harm, the defendant is under no duty to protect the plaintiff from such risks); *Carrender v. Fitterer*, 469 A.2d

120, 125 (Pa. 1983) (explaining that one's assumption of the risk of injury is simply another way of expressing the lack of duty on the part of the defendant to protect against such risks); *Thompson v. Ginkel*, 95 A.3d 900, 906 (Pa. Super. 2014) (citation omitted) (acknowledging that the assumption of the risk doctrine is a function of the duty analysis required in all negligence actions).

Relying on this substantive tort law, the Superior Court in the instant case held that by knowingly and voluntarily executing a valid agreement expressly assuming the risks inherent in participating in the sporting event, Decedent extinguished Triathlon's duty of care, thereby rendering its conduct not tortious. *Valentino*, 150 A.3d at 493.[4] As noted, the intermediate appellate court concluded that absent tortious conduct, Appellant's wrongful death claim could not survive as a matter of law; thus, the trial court did not err in granting summary judgment in favor of Triathlon. *Id.*

The Superior Court in the instant case readily distinguished *Pisano* on the ground that it did not involve an agreement to assume all risks inherent in a particular activity, which would serve to eliminate the duty element of the wrongful death action against the alleged tortfeasor. Acknowledging *Pisano's* principle that a third party's right of action in a wrongful death claim is an independent statutory claim of a decedent's heirs and is not derivative of a decedent's right of action, the Superior Court emphasized that "a wrongful death claim still requires a tortious injury to succeed." *Valentino*, 150 A.3d at 493. The Superior Court cogently explained that *Pisano* does not undermine the fundamental principle that a statutory claimant in a wrongful death action has the burden of proving

---

[4] Notably, the Superior Court presumed the validity of the Agreement as Appellant presented no claim to the contrary. *See id.* at 492 n.6 (explaining that Appellant "does not challenge the substantive validity of the liability waiver as a bar to her claims of ordinary negligence. Consequently, we need not address the validity of the exculpatory provisions in the context of this case."). By declaring the Agreement void as against public policy, the OISR ignores this clear waiver of any challenge to the Agreement on those grounds.

that the defendant's tortious conduct caused the decedent's death. It opined that this cannot occur where the decedent assumed all risks inherent in participating in the activity and thereby abrogated any duty the putative tortfeasor may have had. *Id.*

Similarly, the Superior Court distinguished this Court's decision in *Buttermore v. Aliquippa Hospital*, 561 A.2d 733 (Pa. 1989), upon which Appellant had relied. *Valentino*, 150 A.3d at 495. In that case, James Buttermore was injured in an automobile accident and signed a release in settlement of his claim against the tortfeasors for the sum of $25,000, agreeing to release all persons from liability. *Buttermore*, 561 A.2d at 734. The issue on appeal to this Court was whether Buttermore's wife, who was not a signatory to the settlement agreement, had an independent right to sue the tortfeasors for loss of consortium. *Id.* at 735. Acknowledging that the release applied to all tortfeasors, including the defendants, this Court held that one could not bargain away the rights of others who were not a party to the contract. *Id.* Because Buttermore's wife was not a party to her husband's settlement agreement and because she sought to sue in her own right for loss of consortium, we held that she had an independent cause of action, unaffected by her husband's settlement agreement. *Id.* at 736.

The Superior Court below distinguished *Buttermore*, finding that unlike the express assumption of the risk agreement here, the settlement agreement in *Buttermore* did not extinguish a requisite element of the wife's loss of consortium claim. *Valentino*, 150 A.3d at 496. Stated differently, unlike the express assumption of the risk agreement in the instant case, nothing in the settlement agreement in *Buttermore* precluded the finding that the defendants acted tortiously.

We agree with the Superior Court's application of well-settled tort law and its conclusion that the assumption of the risk agreement entered into between Decedent and the Triathlon operates much differently than the settlement agreement in *Buttermore* and

the arbitration agreement in *Pisano*, as the latter agreements do not preclude a finding that the defendant acted tortiously. We further agree with the intermediate appellate court that a decedent's valid assumption of the risk agreement does not negate his heir's right to commence a wrongful death lawsuit, but it "can support a defense asserting that the alleged tortfeasor owed no duty to the decedent." *Valentino*, 150 A.3d at 494.

Accordingly, once Decedent extinguished Triathlon's duty of care by expressly assuming all risks in the inherently dangerous sporting event, his heir could not resurrect that duty of care after his death. To do so would afford a decedent's heirs more rights than those possessed by a decedent while alive. Such a result not only defies logic, but also the statutory requisites for a wrongful death claim. As there is no genuine issue of material fact and it is clear that Triathlon is entitled to judgment as a matter of law, we would affirm the judgment of the Superior Court, which affirmed the trial court order granting summary judgment in Triathlon's favor. *See* Pa.R.C.P. 1035.2 (providing that summary judgment is appropriate only when there is no genuine issue as to any material fact or when a party which will bear the burden of proof has failed to present evidence sufficient to present the issue to the jury).

As noted, regarding the OISR's *sua sponte* public policy declaration, our primary objection is that the issue of whether the express assumption of the risk agreement violates public policy is not properly before the Court; thus, the grant of relief on this claim cannot serve as a means to disturb the judgment of the Superior Court. *See Steiner v. Markel*, 968 A.2d 1253, 1256 (Pa. 2009) (holding that an appellate court may not reverse a judgment on a basis that was not properly raised and preserved by the parties).

Additionally, we observe that the OISR declares the express assumption of the risk agreement violative of the public policy set forth in the Wrongful Death Act, *i.e.*, to compensate family members of victims of tortious conduct, without any explanation as to

how tortious conduct can exist in the absence of a duty of care.  Further, the OISR seeks to invalidate not all express assumption of the risk contracts, but only those relating to wrongful death claims, based upon the public policy set forth in the Wrongful Death Act.  Accordingly, under the OISR's reasoning, express assumption of the risk agreements would generally be valid to preclude a participant's ordinary negligence claims against the purveyor of an inherently dangerous sport or activity, but would be invalid where a participant's injuries were fatal and his heirs sought recovery for wrongful death.  Thus, a participant who suffered grievous non-fatal injury would have no redress, but his family would have redress if the participant succumbed to his injuries.

This result is untenable as there is no evidence to suggest that it is the public policy of the Commonwealth of Pennsylvania to elevate the rights of victims' heirs over those of the victims themselves or to immunize wrongful death claims from ordinary and readily available defenses.  In fact, not only did the General Assembly premise recovery in wrongful death on the precise tortious conduct that caused the decedent's fatal injuries, but directed expressly that a wrongful death action "may be brought, under procedures prescribed by general rules."  42 Pa.C.S. § 8301(a).  There is simply no provision in the Wrongful Death Act that renders an heir's entitlement to relief absolute.  Had the Legislature intended that mandate, it would have so directed.

Moreover, it is not the role of this Court to create the public policy of this Commonwealth.  Instead, "public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest." *Burstein v. Prudential Prop. & Cas. Ins. Co.*, 809 A.2d 204, 207 (Pa. 2002) (quoting *Eichelman v. Nationwide Ins. Co.,* 711 A.2d 1006, 1008 (Pa. 1998)).  We have held that "only dominant public policy" justifies the invalidation of a contract and in the "absence of a plain indication of that policy through long governmental practice or statutory

enactments, or violations of obvious ethical or moral standards, the Court should not assume to declare contracts contrary to public policy." *Burstein*, 809 A.2d at 207. Significantly, we have acknowledged that in such circumstances, "courts must be content to await legislative action." *Id.*

The OISR fails to heed this warning. By declaring the public policy of this Commonwealth, untethered to legislative fiat and in a case where the issue is not before us, the OISR comes dangerously close to displacing the legislative process with judicial will. Accordingly, we would affirm the judgment of the Superior Court, which affirmed the order granting summary judgment in favor of the Triathlon. While the facts of this case are most tragic, this Court may not afford relief where the law does not so provide.

Chief Justice Saylor and Justice Todd join this opinion in support of affirmance.