Ellen BLACK, individually, and as Administrator and Executrix of the Estate of Eric L. Black, and Randy L. Black

v.

Todd L. JAMISON, Diane E. Myers, as Administrator and Executrix of the Estate of John R. Myers and Commonwealth of Pennsylvania, Department of Transportation

Appeal of: Commonwealth of Pennsylvania, Department of Transportation.

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2006.

Filed Dec. 14, 2006.

J. Bart Delone, Sr., Deputy Attorney General, Harrisburg, for appellant.

Amy L. Coryer, Harrisburg, for appellees, Ellen L. Black, Eric L. Black, and Randy L. Black.

BEFORE: McGINLEY, Judge, and PELLEGRINI, Judge, and KELLEY, Senior Judge.

OPINION BY Judge McGINLEY.

The Commonwealth of Pennsylvania, Department of Transportation (DOT) appeals the order of the Court of Common Pleas of the 39th Judicial District of Pennsylvania, Franklin County Branch (common pleas court) which denied DOT's motion for summary judgment. This Court granted permission to DOT to pursue the appeal.

On May 15, 1999, at approximately 8:45 a.m., Eric L. Black (Decedent Black) was a front seat passenger in a 1998 Chevrolet Celebrity owned by Diane E. Myers and operated by John R. Myers (Decedent Myers). The auto was traveling southbound on State Route 0233, near its intersection with State Route 0030 in Greene Township, Franklin County, Pennsylvania. At the same time and place, a 1986 Ford Mustang, owned and operated by Todd L. Jamison (Jamison), was traveling eastbound on State Route 0030 near its intersection with State Route 0233. State Route 0030 in the vicinity of the accident is a four lane, divided public highway, running east and west, with a posted speed of 55 miles per hour. At that point, State Route 0233 is a two lane highway running north and south with a posted speed limit of 35 miles per hour. Both roads are state highways, owned and maintained by DOT. A stop sign is located at the intersection of State Routes 0233 and 0030 governing traffic approaching the intersection on State Route 0233. Decedent Myers either failed to stop or failed to properly look for approaching traffic on State Route 0030 before he entered the intersection. Jami-

son approached the intersection at an excessive rate of speed and/or failed to notice crossing traffic entering the intersection from State Route 0233. The cars collided at the intersection resulting in the two fatalities.

On or about May 9, 2001, Ellen Black, individually, and as Administrator and Executrix of the Estate of Eric L. Black, and Randy L. Black (the Blacks) filed a complaint in the common pleas court. The Blacks stated causes of action for wrongful death and survival against Diane E. Myers as Administrator and Executrix of the Estate of John R. Myers. The Blacks also raised wrongful death and survival actions against Jamison.

The Blacks brought wrongful death and survival actions against DOT and alleged that both State Route 0023 and 0030 are owned, designed, constructed, and maintained by or on behalf of DOT, that the site of the accident was the subject of traffic and/or engineering studies by DOT due to the occurrence of several previous accidents at the intersection, that the intersection was a dangerous and hazardous roadway, that DOT had notice prior to the accident, and that the intersection's layout and configuration constituted a dangerous condition of the Commonwealth highways of which DOT knew or should have known prior to the accident.

The Blacks also alleged:

38. Defendant Pa DOT was negligent, careless and reckless in its ownership, custody, control and maintenance of the Intersection and/or State Routes 0030 and 0233 in one or more of the following particulars:

a. failing to erect adequate signs and devices or other such safety measures to warn motorists that the intersection of S.R. 0030 and S.R. 0233 is approaching;

b. failing to place a traffic light at the Intersection;

c. failing to erect adequate signs and devices or other such safety measures to warn motorists traveling south on S.R. 0233 that there was a stop sign ahead; and

d. designing, developing, constructing and maintaining an unreasonably dangerous roadway condition within its jurisdiction, particularly with regard to the lack of warning signs and/or traffic lights at the Intersection.

39. The negligence, carelessness and recklessness of Defendant Pa DOT, as described above, created a dangerous condition of Commonwealth-owned real estate and highways within the purview of 42 Pa.C.S.A. § 8522(4), at the Intersection, of which Pa DOT had knowledge and/or notice prior to his accident.

Complaint, May 9, 2001, Paragraphs 38–39 at 8–9; Reproduced Record (R.R.) at R27–R28.

DOT answered and denied the material allegations. In new matter, DOT alleged that it was immune from suit and could not be sued for discretionary functions. DOT also asserted that Decedent's injuries were caused by other parties, the claims were barred by the statute of limitations, the doctrine of assumption of the risk, and the doctrine of release. DOT instituted cross claims against Jamison and Diane E. Myers.

On March 22, 2002, the Blacks entered into a Release and Settlement Agreement (Release) with State Farm Mutual Automobile Insurance Company (State Farm). State Farm had a policy with the Blacks to provide underinsured motorist coverage. The Blacks received $60,000.00. In exchange, the Blacks agreed to:

[F]orever release, acquit and discharge State Farm Mutual Automobile Insur-

ance Company, their predecessors, heirs, successors and assigns, their officers, directors, owners, employees and agents, and all other persons, firms, corporations, associations, partnerships, affiliates, subsidiaries and entities whatsoever (hereinafter collectively referred to as 'Releasees'), of and from any and all actions, causes of actions, claims, demands, damages, costs, loss of services or use, expenses and compensation of whatever kind or nature on account of or in any way growing out of any and all personal injury, death and/or property damage and consequences thereof, and for any damages which may develop at some time in the future, and for any and all unforeseen developments arising from known or unknown injuries or property damage, including all claims resulting or to result from an accident which occurred on or about May 15, 1999, at the intersection of State Route 0233 (Rocky Mountain North) and State Route 0030 (Lincoln Way East) in Greene Township, Franklin County, Pennsylvania.

. . . .

It is understood and agreed that this settlement is being offered as the available underinsured coverage under a policy of issued [sic] by Releasee, State Farm to Releasor, Randy L. Black and that said Releasees deny liability and intend merely to finalize and avoid litigation and buy their peace.

Release and Settlement Agreement, March 22, 2002, at 1–2; R.R. at R11–R12. The Court of Common Pleas of Adams County approved the settlement.

Once it learned of the Release, DOT moved for summary judgment on the basis that the Release was a general release and as a result the Blacks were foreclosed from pursuing an action against DOT as a matter of law. The Blacks answered the

motion for summary judgment and asserted that the Release was not a general release but only released claims for the underinsured motorist benefits available under the policy with State Farm. The Blacks attached affidavits from the State Farm claims adjuster, Heidi Saller–Judy, from the counsel for State Farm, Edwin Schwartz, from the Blacks' counsel, Joseph Patterson, and their own joint affidavit in an effort to establish that the Release only applied to the policy with State Farm. The Blacks attached the petition to approve the underinsured motorists claim filed in the Court of Common Pleas of Adams County. The Blacks also asserted that DOT contributed nothing toward the settlement. The Blacks moved for sanctions and alleged that DOT engaged in dilatory, obdurate, and vexatious conduct in that it delayed in filing an answer and filed a frivolous motion for summary judgment.

By order dated March 16, 2004, the common pleas court denied the motion for summary judgment and the motion for sanctions. With respect to the motion for summary judgment, the common pleas court determined:

> [T]he Release presently at issue, in its first paragraph, contains language consistent with a general release but in its third paragraph specifies that the parties to the settlement, which then resulted in the Release, are State Farm Insurance Company and Randy L. Black.... Plaintiffs [the Blacks] second theory ... *is that the first and third paragraphs of the Release create an ambiguity, thus allowing the Court to look outside the document to determine the intent of the parties to the Release. ...*
> *The Court reviewed the following information in determining the intent of the parties after finding the language of the Release to be ambiguous: The affidavits provided by the various parties involved in the settlement; the Petition to Compromise, Settle, and Discontinue and [sic] Minor's Claim; and the documents provided by Plaintiffs [the Blacks] at oral argument. The Court also considered the fact that two actions, which arose from the same set of facts, were pending at the same time, which is a procedural distinction from the facts of the previously cited cases.*
>
> . . . .
>
> *Clearly, all the parties involved in the settlement meant only to release State Farm Insurance Company from any further liability.*
>
> . . . .
>
> In determining the intent of the parties, the Court also took into consideration the fact that in the present case the Plaintiffs [the Blacks] had two actions pending at the same time. The action in Adams County named State Farm Insurance Company as the defendant and the action in Franklin County included PennDOT as one of the defendants. Plaintiffs [the Blacks] were discussing settlement with PennDOT on November 20, 2003, in the amount of $464,000.00, $250,000.00 ... of which they were asking ... from PennDOT. This serves as evidence that Plaintiffs [the Blacks] did not intend for the Release of State Farm Insurance Company on March 22, 2002, for the amount of $60,000 to release the defendants of a completely separate action in Franklin County from which they were expecting a much larger settlement. (Footnotes omitted) (Emphasis added).

Common Pleas Court Opinion, March 16, 2004, at 9–11.

On appeal, DOT contends that the common pleas court erred when it determined that a general release, which had no lan-

guage limiting the discharge of liability, was ambiguous.[1]

In Pennsylvania, it is axiomatic that releases are construed according to traditional principles of contract law. A release that is not obtained by fraud, duress, or mutual mistake is binding between the parties. *Davis Ex Rel. Davis v. Government Employees Insurance Company*, 775 A.2d 871 (Pa.Super.2001). The effect of a release is to be determined by the ordinary meaning of its language. When the parties to a release agree not to sue each other or anyone else for a given event, this language in the release may discharge others who have not contributed any consideration for the release. This is true even if the language of the release is general and releases "any and all persons" rather than naming the actual persons released. *Taylor v. Solberg*, 566 Pa. 150, 778 A.2d 664 (2001).

> The fundamental rule in interpreting a contract is to ascertain and give effect to the intent of the contracting parties.... The intent of the parties to a written agreement is embodied in the writing itself.... Courts do not assume a contract's language was chosen carelessly, nor do they assume the parties were ignorant of the meaning of the language employed.... When contractual language is clear and unequivocal, its meaning must be determined by its contents alone. (Citations omitted).

*Crawford Central School District v. Commonwealth*, 585 Pa. 131, 143, 888 A.2d 616, 623 (2005).

The language of a contract is unambiguous if a court is able to determine its meaning without any guide other than knowledge of the basic facts on which the contract's meaning depends. The terms of a contract are ambiguous if the terms "are reasonably or fairly susceptible of different constructions and are capable of being understood in more than one sense.... Additionally, we will determine that the language is ambiguous if the language is 'obscure in meaning through indefiniteness of expression or has a double meaning.'" *Profit Wize Marketing v. Wiest*, 812 A.2d 1270, 1275 (Pa.Super.2002), *quoting, Baney v. Eoute*, 784 A.2d 132, 136 (Pa.Super.2001).

In *Buttermore v. Aliquippa Hospital*, 522 Pa. 325, 561 A.2d 733 (1989), our Pennsylvania Supreme Court addressed whether a release was a general release. On December 3, 1981, James Buttermore (Buttermore) had been involved in an automobile accident with Frances Moser (Moser). Buttermore suffered head lacerations, a cervical injury, and numbness of his hands and feet. He was transported by ambulance to Aliquippa Hospital (Hospital) where he was examined and treated. After the initial treatment, it was determined that Buttermore suffered a neck fracture in the accident. On November 14, 1983, Buttermore executed a release of his claim against Moser for $25,000. *Buttermore*, 522 Pa. at 327, 561 A.2d at 734. The release stated:

> I/We being of lawful age, for myself/ourselves, my/our heirs, administrators, executors, successors and assigns hereby remise, release, acquit and forever dis-

---

**1.** This Court's review of a grant or denial of a motion for summary judgment is limited to determining whether the common pleas court committed an error of law or an abuse of discretion. *Salerno v. LaBarr*, 159 Pa. Cmwlth. 99, 632 A.2d 1002 (1993), *petition for allowance of appeal denied*, 537 Pa. 655, 644 A.2d 740 (1994). Summary judgment is only appropriate when, after examining the record in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party clearly establishes that he is entitled to judgment as a matter of law. *Id.*

charge Frances Moser, *et al.* His/her successors and assigns, and/or his, her, their, and each of their associates, heirs, executors and administrators and any and all other persons, associations and/or corporations, whether known or unknown, suspected or unsuspected, past, present and future claims, demands, damages, actions, third party actions, causes of action, or suits at law or in equity, indemnity of whatever nature, for or because of any matter or thing done, omitted or suffered to be done, on account of or arising from damage to property, bodily injury or death resulting or to result from an accident which occurred on or about the 3rd day of December 1981 at or near Aliquippa, Pennsylvania for which I/We have claimed the said Frances Moser, *et al.* to be legally liable, but this release shall not be construed as an admission of liability.

*Buttermore,* 522 Pa. at 327–328, 561 A.2d at 734.

On November 30, 1983, Buttermore and his wife sued the Hospital and certain physicians (collectively, Aliquippa) and alleged the treatment Buttermore received aggravated the injuries incurred in the accident and that his condition worsened because of Aliquippa's negligent treatment and caused irreversible spinal cord trauma and permanent spinal nerve damage. Aliquippa raised the release as a defense in new matter and moved for summary judgment which the Court of Common Pleas of Beaver County granted. Buttermore appealed to our Pennsylvania Superior Court which reversed, then Aliquippa appealed to our Pennsylvania Supreme Court. One of the issues before the Supreme Court was whether the release which discharged all claims and parties thereto resulted in the discharge of others who had not contributed consideration for the release. Aliquippa argued that because Buttermore released the world, he released Aliquippa. *Buttermore,* 522 Pa. at 328, 561 A.2d at 734–735. Our Pennsylvania Supreme Court reversed as to Buttermore [2]:

> The appellants [Aliquippa] now present the settlement agreement and argue that since he released the world, they are released. In that they are correct, he [Buttermore] cannot sue because he agreed not to. That they offered no consideration for his release is of no moment, because he included them to obtain a settlement for which he received consideration.

*Buttermore,* 522 Pa. at 330, 561 A.2d at 735–736.[3]

**2.** The Supreme Court affirmed as to Buttermore's wife because she was not a party to the release.

**3.** Our Pennsylvania Supreme Court addressed this issue yet again in *Republic Insurance Company v. The Paul Davis Systems of Pittsburgh South, Inc.,* 543 Pa. 186, 670 A.2d 614 (1995). In *Republic,* a homeowner's residence suffered damage from a storm. The Paul Davis Systems of Pittsburgh South, Inc. (PDS) was hired to repair the damage and removed the roof but did not take precautions to protect the structure from rain. After a storm, there was more damage. Republic Insurance Company (Republic), the subrogee of the holder of one of its homeowner's policies paid for substantially all of the damage.

The insured sued Republic and alleged that there were additional damages. Republic settled the claim for $5,000 and obtained a release. Republic then sued PDS. PDS asserted that the release Republic obtained barred its claim. The Court of Common Pleas of Allegheny County granted PDS's motion for summary judgment. On appeal, the Superior Court vacated on the basis that the release served only to release those who might reasonably be considered to be within the ambit of responsibility under the released cause of action. *Republic,* 543 Pa. at 187–188, 670 A.2d at 614–615.

Our Pennsylvania Supreme Court applied *Buttermore* and determined that because the release stated that it was releasing "all other

In *Martin v. Donahue*, 698 A.2d 614 (Pa.Super.1997), *petition for allowance of appeal denied*, 555 Pa. 745, 725 A.2d 1222 (1998), our Superior Court distinguished *Buttermore* and determined the release at issue was limited. In *Martin*, John Martin (Martin) had been injured at work when he fell from a scaffold at a construction site. Martin was taken to a hospital where he was treated. He was told to follow up with an orthopedic specialist. John R. Donahue, M.D. (Dr. Donahue) treated Martin and performed arthroscopic surgery. Martin's employer asserted that Martin could not receive workers' compensation benefits because he was an independent contractor. Martin filed a claim against the contractor for whom he worked and the general contractor who hired the contractor. Martin settled with the two contractors for $36,000 and released them from any further responsibility for damages that might occur as a result of his injuries. The release specifically named the two contractors and any other party who might have been responsible for the fall. Under the release Martin agreed to forfeit his right to pursue monetary damages for any future unexpected consequences, known or unknown, which he might suffer for any medical treatment he might need to pursue as a result of the accident. Martin and his wife filed a medical malpractice action against Dr. Donahue and alleged that the surgery performed by Dr. Donahue was unnecessary and improperly performed and that Dr. Donahue failed to evaluate and treat Martin properly. Dr. Donahue moved for summary judgment on the basis that the release was intended to discharge liability for all parties. The Court of Common Pleas of Montgomery County denied the motion for

summary judgment and certified the matter for appeal. Dr. Donahue appealed to the Superior Court. *Martin*, 698 A.2d at 615–616.

Dr. Donahue argued that the plain meaning of the release discharged all claims stemming from the accident pursuant to *Buttermore*. The Superior Court disagreed and affirmed:

> Herein, with selectively chosen deletions, appellant [Dr. Donahue] attempts to persuade the casual observer that his claim is righteous based upon Buttermore. However, a reading of the full text of the release illuminates the fallacy of appellant's [Dr. Donahue] position, since the language of the document limited the discharge of liability to *named* parties. Buttermore easily is distinguished as there was no limiting language.

A review of the facts reveals that it mirrors the release we evaluated in *Harrity v. Medical College of Pennsylvania Hospital* [439 Pa.Super 10, 653 A.2d 5 (Pa.Super.1994)], . . . (appellant released persons and all entities involved in a specific suit filed by victim; while language on its face was specific, affidavit of attorney who drafted document was permitted and indicated that intent of document was to release only parties named in suit). Herein, the release clearly states that it pertains to any and all entities who are or may be determined to be liable for 'the claims referred to [*In The matter of Martin v. Heydt Plaster and Stucco, Inc., et al Chester County Court of Common Pleas*, No. 91–01797].' This language limits the long arm of this release to the par-

persons" from "any and all actions" of "whatsoever kind or nature," and that it was not limited to matters that were or could have been raised in the action against Republic, it

was a general release and reversed the Superior Court order. *Republic*, 543 Pa. at 189, 670 A.2d at 615–616.

ties named in the particular lawsuit which arose from appellee's [Martin] fall. As there can be no argument that appellant [Dr. Donahue] was not a named party to that suit, the release does not apply to him.

Further, it is obvious that the language pertaining to future medical treatment, likewise, is specific. First, the document acknowledges the possibility of future health problems which might be associated with the fall, then it seeks to limit the liability of the releasees by defining the context of medical injury to 'serious or unexpected consequences [which] might result from the present injuries, known or unknown, from said incident, accident or medical treatment.' Clearly, this language was designed to discharge the named releasees from liability for accidental or medical injuries Mr. Martin might sustain as a result of his fall. Specifically, the named releasees would not be liable for appellant's [Dr. Donahue] alleged negligence. Therefore, in light of the holding in *Harrity v. Medical College of Pennsylvania, supra,* it is clear from the plain meaning of the limiting language in the document that appellant [Dr. Donahue] was not included as a party to the release.

Appellant [Dr. Donahue] argues that the trial court erred when it considered extraneous evidence of intent. While it is clear to this Court that the language of the release did not discharge appellant [Dr. Donahue] from liability, appellant [Dr. Donahue], nonetheless, urged the hearing court to adopt his interpretation. Therefore, in order to ascertain the intent of the parties, the court deemed it necessary to consider the circumstances surrounding the release, the situation of the parties, and the nature of the context of the agreement. . . . It was reasonable for the court to look for sources other than the contract for clarification. The court did not abuse its discretion in allowing affidavit and deposition testimony of the attorneys who drafted the releases. (Citation omitted).

*Martin,* 698 A.2d at 617.

■■■ DOT argues that the common pleas court was presented with the same type of general release language in the present case as it was in *Buttermore* and *Republic* which released "all other persons" but failed to apply the proper principles of contract construction when it failed to correctly interpret the Release as a general release.

The common pleas court adroitly reasoned that the third paragraph of the Release created an ambiguity when read in conjunction with the first paragraph which contained the language of a general release. The third paragraph of the Release stated "It is understood and agreed that this settlement is being offered as the available underinsured coverage under a policy of [sic] issued by Releasee, State Farm to Releasor, Randy L. Black and that said Releasees deny liability and intend merely to finalize and avoid litigation and buy their peace." Release and Settlement Agreement at 2; R.R. at R11.

The first paragraph of the Release certainly bears similarities to the general release in *Buttermore.* However, the third paragraph identifies the parties and states that the settlement was offered as the available underinsured coverage and conceivably limits the terms of the Release to State Farm. This language is somewhat similar to the language in the release in *Martin,* which limited the release to any and all entities who may have been liable for claims referred to in Martin's action against Heydt Plaster and Stucco, Inc., et al. This Court agrees with the common pleas court that it is so difficult to recon-

cile paragraph one and paragraph three of the Release that it was reasonably necessary to consider extrinsic evidence.

This Court does not accept DOT's assertion that paragraph three is equivalent to the portion of the release in *Buttermore* which stated that the settlement was for injuries suffered in an accident which Buttermore alleged was caused by Moser even though Moser did not admit any liability. Similarly, with respect to *Republic,* the portion of the release quoted does not contain the potentially limiting language found here and does not contain the same ambiguity.

 Once the common pleas court determined that the Release was ambiguous it had the authority and responsibility to look outside the terms of the Release itself. When the language of a contract is ambiguous, the parol evidence rule does not apply to bar evidence introduced to show both the intent of the parties and the circumstances surrounding the drafting of the contract. *Harrity v. Medical College of Pennsylvania Hospital,* 439 Pa.Super. 10, 653 A.2d 5 (1994).

The common pleas court properly reviewed the affidavits executed by the State Farm claims adjuster, Heidi Saller–Judy, the counsel for State Farm, Edwin Schwartz, the Blacks' counsel, Joseph Patterson, and the Blacks in an effort to establish that the Release was restricted to the State Farm policy. It is uncontested that these affidavits stated that the Release only applied to a settlement for underinsured motorist benefits. The common pleas court also reviewed the petition to approve the underinsured motorists claim filed in the Court of Common Pleas of Adams County. The common pleas court took into account that there were two separate actions and in the one involving DOT, the Blacks were discussing a settlement of $464,000 with $250,000 of that coming from DOT. The common pleas court determined that the Blacks and State Farm did not intend the Release to be a general release. This Court must agree with the common pleas court.

Affirmed.

### ORDER

AND NOW, this 14th day of December, 2006, the order of the Court of Common Pleas of the 39th Judicial District of Pennsylvania, Franklin County Branch in the above-captioned matter is affirmed.

DISSENTING OPINION BY Judge PELLEGRINI.

I respectfully dissent from the majority's determination that the Release and Settlement Agreement entered into by the Black Estate and State Farm Mutual Automobile Insurance Company (State Farm) did not constitute a release of all parties involved in the litigation, including the Commonwealth of Pennsylvania, Department of Transportation (PennDot), because the language in that agreement was clear and unambiguous.

On May 15, 1999, Eric L. Black was killed while riding in a car driven by John R. Myers, who also died, when Myers' car collided with a car driven by Todd L. Jamison at the intersection of State Routes 0233 and 0030. The Black Estate filed with the Court of Common Pleas of the 39th Judicial District of Pennsylvania, Franklin County Branch (trial court) wrongful death and survival actions against Todd L. Jamison and the Estate of John R. Myers. The Black Estate also filed wrongful death and survival actions against PennDot alleging, *inter alia,* that PennDot owned, designed, constructed and maintained State Routes 0023 and 0030, and it was negligent, careless and reckless in its ownership, custody, control and

maintenance of those state routes by failing to erect adequate signs and safety measures at the intersection. PennDot filed an answer denying the allegations and alleging under new matter that the claims were barred by the statute of limitations, assumption of the risk and the doctrine of release. PennDot also filed cross claims against Todd L. Jamison and the Estate of John R. Myers.

On March 22, 2002, the Black Estate executed a "Release and Settlement Agreement" (Release) in its case against State Farm which was filed in the Court of Common Pleas of Adams County at No. 00–31–02.[1] The entire document read as follows:

### RELEASE AND SETTLEMENT AGREEMENT

The undersigned, **ELLEN L. BLACK,** INDIVIDUALLY AND AS THE DULY QUALIFIED Administrator and Executrix of the Estate of Eric L. Black, and **RANDY L. BLACK** (hereinafter referred to collectively as "Releasors"), declare that, for and in consideration of **SIXTY THOUSAND and NO/100 DOLLARS ($60,000.00)**, the receipt of which is hereby acknowledged, for themselves, their heirs, administrators, successors and assigns, and for the Estate of Eric L. Black, its heirs, administrators, successors and assigns do *forever release, acquit and discharge* **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,** their predecessors, heirs, successors and assigns, their officers, directors, owners, employees and agents, *and all other persons, firms corporations, associations, partnerships, affiliates, subsidiaries and entities whatsoever (hereinafter collectively re-*

*ferred to as "Releasees"), of and from any and all actions, causes of actions, claims, demands, damages, costs, loss of services or uses, expenses and compensation of whatever kind or nature on account of or in any way growing out of any and all personal injury, death and/or property damage and consequences thereof, and for any damages which may develop at some time in the future, and for any and all unforeseen developments arising from known or unknown injuries or property damage, including claims resulting or to result from an accident which occurred on or about May 15, 1999, at the intersection of State Route 0233 (Rocky Mountain Road North) and State Route 0030 (Lincoln Way East) in Greene Township, Franklin County, Pennsylvania.*

It is expressly understood and agreed that this Release and Settlement Agreement is intended to apply to and does apply to not only all known injuries, losses and damages, *but further operates to release, acquit and forever discharge any and all claims or actions for any further injuries, losses and damages which arise from or may be related to the occurrence set forth in the lawsuit noted hereinabove, even if said injuries, losses, and damages are unknown at the time and develop in the future.*

It is understood and agreed that this settlement is being offered as the available underinsured coverage under a policy of issued by Releasee, State Farm to Releasor, Randy L. Black and that said Releasees deny liability and intend merely to finalize and avoid litigation and buy their peace.

---

1. That case was captioned: "Ellen L. Black, as Administrator and Executrix of the Estate of Eric L. Black, and on her own behalf and

*Randy L. Black v. State Farm Insurance Company."*

It is further understood and agreed that this is the complete Release and Settlement Agreement, and that there are no written or oral understandings, or agreements, directly or indirectly connected with this Release and Settlement that are not incorporated herein. It is expressly understood and agreed that this Agreement and Release shall be binding upon and inure to the benefit of the successors, assigns, heirs, executors, administrators, and legal representatives of both Randy L. Black and Ellen L. Black, individually, and as the Administrator and Executrix of the Estate of Eric L. Black.

**RANDY L. BLACK AND ELLEN L. BLACK, INDIVIDUALLY, AS THE ADMINISTRATOR AND EXECUTRIX OF THE ESTATE OF ERIC L. BLACK, HEREBY DECLARES THAT THE TERMS OF THIS RELEASE AND SETTLEMENT AGREEMENT HAVE BEEN COMPLETELY READ; THAT THEY HAVE HAD THE OPPORTUNITY TO DISCUSS THE TERMS OF THIS SETTLEMENT WITH LEGAL COUNSEL OF THEIR CHOICE; AND THAT SAID TERMS ARE FULLY UNDERSTOOD AND VOLUNTARILY ACCEPTED *FOR THE PURPOSE OF MAKING A FULL AND FINAL COMPROMISE OF ANY AND ALL CLAIMS ON ACCOUNT OF THE DAMAGES AND LOSSES MENTIONED ABOVE AND FURTHER FOR THE EXPRESS PURPOSE OF PRECLUDING FOREVER AND FURTHER OR ADDITIONAL SUITS BY THEMSELVES OR THE ESTATE OF ERIC L. BLACK, ARISING OUT OF THE AFORESAID CLAIMS.* (Bold in original; emphasis in italics added.)**

The Release was signed by Ellen Black and Randy L. Black.

PennDot filed a motion for summary judgment based on the language of the Release arguing that it was a general release and that the Black Estate was precluded from pursing any action against it as a matter of law. The Black Estate filed an answer and new matter requesting sanctions. The Black Estate attached affidavits from the State Farm claims adjuster in an effort to prove that the Release only applied to the policy with State Farm and did not release any other parties. By order dated March 16, 2004, the trial court denied PennDot's motion for summary judgment and the Black Estate's motion for sanctions. The trial court stated that it reviewed the language in the Release and found the language in the first and third paragraphs ambiguous. Necessarily then, it reviewed the other documents provided by the Black Estate, including the Affidavit from the State Farm claims adjuster which indicated that the parties only meant to release State Farm from any further liability. The trial court further pointed out that there were two separate actions pending at the same time, one with State Farm as a defendant, the other with PennDot as a defendant. The trial court did not believe that the Release was meant to release PennDot because the action against it was for $464,000, of which $250,000 was PennDot's obligation, and surely the Black Estate did not intend to release PennDot for $60,000. This appeal by PennDot followed.

The majority affirms the trial court essentially on the basis that the third paragraph of the Release created an ambiguity. I dissent because I disagree that any ambiguity was created by the Release, and it was unnecessary for the trial court to look outside of that document for further understanding.

In order to understand the Release at issue, it is necessary to know there is a difference between a "general" release and

a "joint tortfeasor" release. The former is a release that has the effect of discharging any and all liability of *all* of the parties who could have contributed to the injury. *See Oviatt v. Automated Entrance System Company,* 400 Pa.Super. 493, 583 A.2d 1223 (1990). The latter is an agreement that releases *specifically named parties* in the document from any further liability when there has been more than one party involved in the litigation.

In reviewing the Release, it is apparent that the Black Estate signed a "general" release because it was signing away its rights to any future claims against *any other parties* who may have had any involvement with the accident and litigation, and it did not specifically name State Farm as the only party released from liability. Paragraph one clearly sets this document up as a "general" Release stating:

> [The Black Estate] *do forever release, acquit and discharge* **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,** their predecessors, heirs, successors and assigns, their officers, directors, owners, employees and agents, *and all other persons, firms corporations, associations, partnerships, affiliates, subsidiaries and entities whatsoever (hereinafter collectively referred to as "Releasees"), of and from any all actions, causes of actions, claims, demands, damages, costs, loss of services or use, expenses and compensation of whatever kind or nature on account of or in any way growing out of any and all personal injury, death and/or property damage and consequences thereof, and for any damages which may develop at some time in the future, and for any and all unforeseen developments arising from known or unknown injuries or property damage, including claims resulting or to result from an accident which occurred on or about May 15, 1999, at the intersection of State Route 0233 (Rocky Mountain Road North) and State Route 0030 (Lincoln Way East) in Greene Township, Franklin County, Pennsylvania.*

The second paragraph of the Release again reiterates that its intent is to release and forever discharge any claims for future losses or damages that might arise from or be related to the lawsuit and are currently unknown. The third paragraph which the trial court found so vague in light of the rest of the entire Release merely states that State Farm is being released from liability. The remainder of the Release, however, clearly states that the Black Estate understands that it is voluntarily accepting the $60,000 offered as a "full and final compromise of *any and all claims*" for the "*express purpose of precluding forever and further or additional suits by themselves of the estate of Eric L. Black.*" If it had been the intent of the Black Estate to limit the release to State Farm as one of the many joint tortfeasors, its intent would have been reflected in a joint tortfeasor Release which its counsel would have drafted, but the Release did not reflect that intent. Instead, the general Release reflected an intent to release all persons and all claims.

In finding that there was an ambiguity when there was none, the majority agrees with the trial court that extrinsic evidence was necessary because none of the case law is directly on point or close enough as the cases bear similarities with either paragraph one or paragraph three of the Release, but not with both. However, that is of no import because a general release form was used, and that was what the trial court had to review.

Accordingly, I would reverse the trial court.