J-A02008-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DORIS VALINCIUS AND JOHN VALINCIUS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| BRUCE WEINER, M.D., ASSOCIATED SURGEONS, P.C., MONTGOMERY HOSPITAL AND MEDICAL CENTER, LINDA L. KURTZ, D.O., AND JOHN E. DEVENNY, M.D. | |
| Appellees | No. 3539 EDA 2013 |

Appeal from the Judgment Entered November 13, 2013
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2011-15685

BEFORE:  PANELLA, J., LAZARUS, J., and WECHT, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JULY 23, 2015**

Doris Valincius and John Valincius appeal from the order granting summary judgment in favor of Appellees entered in the Court of Common Pleas of Montgomery County.  After careful review, we affirm.

The trial court set forth the facts of this case as follows:

Several years before filing the [p]resent [a]ction, [the Valinciuses] participated in a mass tort litigation in Philadelphia regarding certain hormone replacement therapy drugs taken by Doris Valincius (generally, "the HRT Litigation").  The HRT Litigation was filed in 2004 and included a complaint[,] a long [f]orm [c]omplaint signed by both [of the Valinciuses], and a fact sheet, which was signed by . . . Doris Valincius[.]  According to the HRT [c]omplaint, Doris Valincius was prescribed various HRT drugs from 1990 to 1998.  Subsequently, she was diagnosed by Dr. Weiner with breast cancer in June, 2002.

. . .

> [The Valinciuses] filed this medical negligence action in June, 2011 ("the Present Action"). Subsequently, [the Valinciuses] filed an amended complaint[.] According to the [a]mended [c]omplaint, in 2002, after a diagnosis of possible breast cancer, . . . Doris Valincius treated with Defendant Bruce Weiner, M.D. and Associated Surgeons, P.C. . . . That same year, she was admitted to Defendant Montgomery Hospital for surgery[.] Upon admission, [Dr.] Weiner performed a procedure "generally described as a partial mastectomy with axillary dissection and sentinel node identification."
>
> For the next eight years, [Mrs. Valincius] continued under the care of Dr. Weiner, Montgomery Hospital, Defendant Linda L. Kurtz . . ., and Defendant [Dr.] John E. Devenney[.] In the [a]mended [c]omplaint, [Mrs.] Valincius complained about pain and discomfort in the area of the surgery and underwent many investigative procedures during that eight year period. In 2010, . . . Dr. Weiner located and removed a retained surgical sponge that was left behind during the 2002 surgery. [The Valinciuses] commenced the Present Action in June, 2011.

Trial Court Opinion, 3/7/14, at 7, 1-2.

In 2013, the defendants each filed for summary judgment. By order entered on November 14, 2013, the trial court granted summary judgment in favor of all defendants and dismissed the Valinciuses' action. The court found that the Valinciuses' claims were barred by the terms of a release they executed in settlement of the HRT mass tort claim. The Valinciuses filed a timely notice of appeal followed by a court-ordered statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court filed its Rule 1925(a) opinion on March 7, 2014.

The Valinciuses raise the following issues for our review:[1]

1. Whether the Superior Court should distinguish this case from **Buttermore** [**v. Aliquippa Hospital**, 561 A.2d 733 (Pa. 1989,] and its progeny because there is no causal connection between the injury and the subsequent malpractice claim and no specific event to release.

2. Whether the trial court erroneously concluded there is a causal connection between the HRT drugs and [Mrs. Valincius'] breast cancer.

3. Whether the trial court erred when it considered the Fact Sheet from the Hormone Replacement Therapy lawsuit.

4. Whether New York [law] applies to this case and thereby requires consideration of the purpose and intent of the HRT release.

Brief of Appellant, at 1.

We begin by noting our standard and scope of review of an order granting summary judgment:

Our scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is de novo.

_____

[1] We have renumbered the Valinciuses' issues for ease of disposition.

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a prima facie cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Reinoso v. Heritage Warminster SPE LLC*, 108 A.3d 80, 84 (Pa. Super. 2015) (brackets omitted).

The Valinciuses' first two issues are interrelated and, as such, will be addressed together. The Valinciuses argue that the trial court inappropriately relied on **Buttermore** to enforce the release against them because: (1) there was no causal connection between the HRT medication ingested by Mrs. Valincius and the breast cancer which led to the alleged malpractice at issue here; (2) there was no specific "event" to release; and (3) they did not intend to release the Appellees when they executed the HRT release. These claims are meritless.

We begin by noting that "the effect of a release must be determined from the ordinary meaning of its language." **Buttermore**, 561 A.2d at 735. "[A] release given to a particular individual and 'any and all other persons . . . whether herein named or not' [is] applicable to all tort-feasors despite the fact they were not specifically named." **Id.**

Here, the trial court relied on **Buttermore** to enforce the HRT release against the Valinciuses in the instant suit against the Appellees. In **Buttermore**, the plaintiff suffered injuries in an automobile accident with Frances Moser. Buttermore sought treatment for those injuries at Aliquippa

- 4 -

Hospital. Buttermore subsequently executed a release in settlement of his claim against Moser, which release provided, in relevant part, as follows:

> I/We . . . hereby remise, release, acquit and forever discharge Frances Moser, et al. . . . and all other persons, associations and/or corporations, whether known or unknown, suspected or unsuspected, past, present and future claims, demands, damages, actions, third party actions, causes of action, or suits at law or in equity, indemnity of whatever nature, for or because of any matter or thing done, omitted or suffered to be done, on account of or arising from damage to property, bodily injury or death resulting or to result from an accident which occurred on or about the 3rd day of December, 1981 at or near Aliquippa, Pennsylvania for which I/We have claimed the said Frances Moser, et al. to be legally liable[.]

*Id.* at 734. Thereafter, Buttermore sued Aliquippa Hospital, alleging that the treatment he received at the facility aggravated the injuries he had sustained in the accident with Moser. In new matter, Aliquippa Hospital raised the Moser release as a defense and, ultimately, was granted summary judgment. This Court reversed, and the Supreme Court granted allowance of appeal.

On allowance of appeal, Buttermore argued that he did not intend to release the hospital from liability when he signed the Moser release. The Supreme Court held that, where there is no allegation of fraud, accident or mutual mistake, the plain language of the release must be given its full effect. The Court quoted its earlier decision in ***Emery v. Mackiewicz***, 240 A.2d 68 (Pa. 1968), noting:

> If such a release can be nullified or circumvented, then every written release and every written contract or agreement of any kind no matter how clear and pertinent and all-inclusive, can be

set aside whenever one of the parties has a change of mind or whenever there subsequently occurs a change of circumstances which were unforeseen, or there were after-discovered injuries, or the magnitude of a releasor's injuries was unexpectedly increased, or plaintiff made an inadequate settlement. It would make a mockery of the English language and of the law to permit this release to be circumvented or held to be nugatory.

**Buttermore**, 561 A.2d at 735, quoting **Emery**, 240 A.2d at 70. The Court went on to state:

Parties with possible claims may settle their differences upon such terms as are suitable to them. They may include or exclude terms, conditions and parties as they can agree. In doing so, they may yield, insist or reserve such right as they choose. If one insists that to settle, the matter must end then and forever, as between them, they are at liberty to do so. They may agree for reasons of their own that they will not sue each other or any one for the event in question. **However improvident their agreement may be or subsequently prove for either party, their agreement, absent fraud, accident or mutual mistake, is the law of their case**.

**Id.** (emphasis added).

The Valinciuses claim that the trial court misapplied **Buttermore** for several reasons. First, they argue that **Buttermore** requires the existence of a causal connection between Mrs. Valincius' breast cancer and the HRT claim. The Valinciuses assert that such a causal connection existed in **Buttermore** and its progeny, including **Dublin v. Shuster**, 598 A.2d 1296 (Pa. Super. 1991) (auto accident and subsequent malpractice), **Smith v. Thomas Jefferson Univ. Hosp.**, 621 A.2d 1030 (Pa. Super. 1993) (auto accident and subsequent malpractice), and **Brown v. Herman**, 665 A.2d 504 (Pa. Super. 1995) (fall from defective stool and subsequent

- 6 -

malpractice).  Because it was never established that the cancer was caused by Mrs. Valincius' ingestion of HRT drugs, there is no nexus between the "prior event" and the malpractice claim at issue here.  Thus, under **Butterworth** and its progeny, the Valinciuses argue that the court erred in granting summary judgment in favor of the Appellees.  We find this argument to be misplaced.

The release executed by the Valinciuses in the HRT litigation provides, in relevant part, as follows:

A. <u>Complete and General Release, Covenant Not to Sue & Assignment</u>

1. The Claimant, individually and for her family members, heirs, beneficiaries, and agents, hereby RELEASES, ACQUITS, and FOREVER DISCHARGES the HT Defendants, the other Released Parties, as defined below, and ANY AND ALL OTHER INDIVIDUALS OR ENTITIES WHO ARE OR MAY BE CLAIMED TO BE LIABLE TO THE CLAIMANT (AND HER FAMILY MEMBERS, HEIRS, SUCCESSORS, BENEFICIARIES AND AGENTS) of and from all Released Claims, as defined below.  The Claimant, individually and for heirs, beneficiaries, successors, and agents, also hereby agrees and covenants not to sue the HT Defendants, the other Released Parties, as defined below, and ANY AND ALL OTHER INDIVIDUALS OR ENTITIES WHO ARE OR MAY BE CLAIMED TO BE LIABLE TO THE CLAIMANT (AND HER FAMILY MEMBERS, HEIRS, BENEFICIARIES, SUCCESSORS, AND AGENTS) in any capacity, for any Released Claims, as defined below.  **It is expressly understood and agreed by the Claimant that the foregoing release is intended to and does include a release of all claims that were, could have been, or could be brought (whether now or in the future, including any future cancer) in connection with the facts, events, and incidents that gave rise to or related in any way to this Civil Action.**

2. The term "Released Parties" as used herein shall mean:

   [a.] . . .

   b. . . .

   c.      Any and all individuals or entities who furnished any medical care or treatment and/or prescribed or dispensed Hormone Therapy to the Hormone Therapy Claimant arising out of or relating to the Hormone Therapy Claim, including all such physicians, hospitals, health care providers, pharmacies and any other actual or potential defendants.

   d. . . .

3. The term "Released Claims" shall mean any and all claims, demands, damages, injuries, losses, and causes of action, of whatever nature or character, whether known or unknown, past, present or future (including any future cancer), that have been, could have been, may be, or could be alleged or asserted now or in the future, whether alleged or asserted or not, whether founded in law, equity, admiralty, tort, contract, statute, rule, regulation, or otherwise, including any loss or compensatory or punitive damage claim relating thereto; claims for future cancer or wrongful death; claims for consumer fraud, refunds, unfair business practices, deceptive trade practices, and other similar claims whether arising under statute, regulation or judicial decision; claims for medical screening and monitoring, injunctive and declaratory relief; and claims for economic or business losses or disgorgement of profits, deriving from or related to the prescription, purchase or use of Hormone Therapy, and including any alleged loss of consortium or other derivative claims related thereto.

4. THE RELEASES IN PARAGRAPH II.A.1 ABOVE ARE SPECIFICALLY INTENDED TO OPERATE AND BE APPLICABLE EVEN IF IT IS ALLEGED, CHARGED, OR PROVEN THAT SOME OR ALL OF THE CLAIMS OR DAMAGES RELEASED WERE CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE, NEGLIGENCE PER SE, GROSS NEGLIGENCE, BREACH OF EXPRESS OR IMPLIED

WARRANTY, MISREPRESENTATION, VIOLATION OF STATUE OR COMMON LAW, DEFECTIVE PRODUCT, FAILURE TO WARN, RECKLESS OR INTENTIONAL CONDUCT, FRAUD, MALICE, OR CONDUCT OF ANY TYPE BY ANY OF THE RELEASED PARTIES AND/OR ANY THIRD PARTY.

Release, 11/30/11, at 3-4 (emphasis added at ¶ II.A.1). The Release also states that it is "intended by the Claimant to be as broad as can possibly be created by the Claimant and including any liability whatsoever." *Id.* at 5.

As stated above, where, as here, there is no allegation of fraud, accident or mutual mistake, the plain language of the release must be given its full effect. In each of the cases cited by the Valinciuses, the release specifically refers to the particular event that caused the injury to the claimant. In *Buttermore*, the release discharges all claims related to "an accident which occurred on or about the 3rd day of December, 1981 at or near Aliquippa, Pennsylvania." *Buttermore*, 561 A.2d at 734. In *Dublin*, the release discharges all liability for injury sustained "in consequence[] of an accident that occurred on or about the second day of August, 1981[.]" *Dublin*, 598 A.2d at 1299. Similarly, in *Smith*, the release applied to all injuries "and the consequences thereof resulting or to result from the accident[.]" *Smith*, 621 A.2d at 1032 n.2. Finally, in *Brown*, the release applied to all injuries "sustained or received on or about the 5th day of January, 1987, when an incident occurred at [appellant's] residence where [appellant] fell from a chair/stool, and about which specific allegations were made by us in pleadings." *Brown*, 665 A.2d at 506. Thus, in deciding

those cases, the Courts considered the plain language of the releases in question, which included references to specific causal events.

In contrast to those cases cited by the Valinciuses, here, the language of the release does not specifically require a causal link between the ingestion of HRT drugs and possible later claims. Its application is not limited to injuries sustained as a result of Mrs. Valincius' ingestion of HRT drugs. Rather, the Release applies to any claims connected to "the facts, events, and incidents that gave rise to or related **in any way** to this Civil Action." Release, 11/30/11, at ¶ II.A.1 (emphasis added). This language clearly encompasses Mrs. Valincius' breast cancer and associated complaints and conditions, including the malpractice alleged to have occurred during Mrs. Valincius' partial mastectomy and left axillary dissection surgery in July 2002. Had Mrs. Valincius never developed breast cancer, she would never have had reason to join the HRT class action. Accordingly, the breast cancer is plainly a "fact[], event[], or incident[] that gave rise to or related in any way to" the HRT action, and, as such, the Release must be read to apply to the claims asserted against the Appellees in the instant matter.

The Valinciuses also claim that they never intended to release the Appellees, arguing "[i]t would simply not make sense for [them] to release the parties that they had just filed suit against for the retained surgical sponge." Brief of Appellants, at 12. We disagree.

The Valinciuses rely on two cases to support their contention, both of which are inapt. In **Vaughn v. Didizian**, 648 A.2d 38 (Pa. Super. 1994), the appellant, Vaughn, was injured while riding in a car driven by Tonyia Woods on August 12, 1983. On November 22, 1983, Vaughn, in exchange for the sum of $33,000, executed a release providing, in relevant part, as follows:

> the undersigned hereby releases and forever discharges Donald Woods and Tonyia Woods and all other persons, firms and corporations from all claims and demands, rights and causes of action of any kind the undersigned now has or hereafter may have on account of or in any way growing out of personal injuries known or unknown to me/us at the present time. . . resulting or to result from an occurrence which happened on or about August 12, 1983.

*Id.* at 39. Subsequently, Vaughn sought treatment from Dr. Didizian, who performed surgery on her on August 1, 1984. Vaughn thereafter instituted a medical malpractice action against Dr. Didizian, alleging that he was negligent in his performing the surgery. Dr. Didizian filed a motion for summary judgment, alleging that Vaughn's action was barred by the release she executed on November 22, 1983.

On appeal to this Court, Vaughn argued that the trial court erred in granting summary judgment because the parties to the release did not intend to bar a malpractice claim that had not accrued at the time the release was executed. The Court noted that Pennsylvania uses a two-prong approach to construing the effect of a release:

- 11 -

> The court of Pennsylvania have traditionally determined the effect of a release using the ordinary meaning of its language *and* interpreted the release as covering only such matters as can fairly be said to have been within the contemplation of the parties when the release was given. Moreover, releases are strictly construed so as not to bar the enforcement of a claim which had not accrued at the date of the execution of the release.

*Id.* at 40 (emphasis in original; citations and quotation marks omitted).

The Court concluded that the trial court had only utilized the first component – the ordinary meaning of the release's language – but failed to consider the second – that a release may only cover matters within the parties' contemplation. Because "[n]othing in the circumstances of [the] case suggest[ed] that the parties to the release were anticipating [Dr.] Didizian's negligent surgery," the Court concluded that the release did not encompass the medical malpractice claim.

Here, however, the cause of action based on Dr. Weiner's alleged negligence had already accrued at the time the release was executed. The Valinciuses signed the HRT release nine years after the surgery in which the sponge was left behind, one year after the sponge was discovered in Mrs. Valincius' body, and five months after the Valinciuses actually filed suit for malpractice. Clearly, the action for the malpractice allegedly committed by Dr. Weiner was within the Valinciuses' contemplation at the time they entered into the HRT release in November 2011. **See Brown**, **supra** (Court's decision to apply release in subsequent malpractice suit "further compelled by the fact that appellants executed the release eighteen months

*after* they filed the malpractice suit. Hence, they were clearly aware of the alleged malpractice when they relinquished their rights[.]") Despite their clear awareness of the pending litigation against the Appellees, the Valinciuses made no effort to exclude that action from the terms of the HRT release.[2] Accordingly, **Vaughn** is inapposite to the case at hand.

The Valinciuses also cite **Martin v. Donahue**, 698 A.2d 614 (Pa. Super. 1997), to support their assertion that extraneous evidence of the parties' intent should be considered. In **Martin**, the appellee, Martin, was injured at work. Following emergency treatment, Martin was operated on by the appellant, Dr. Donahue. Martin subsequently reached a settlement with his employers and executed a release in which he discharged his employers from any further liability for damages resulting from his injuries. Thereafter, Martin sued Dr. Donahue for malpractice. Dr. Donahue sought summary judgment based on the release Martin had previously signed in favor of his employers. At the hearing in the trial court, Martin presented deposition testimony and affidavits from the attorneys involved to demonstrate that the release was drafted with the intention of releasing only the named parties

_____

[2] It appears that the Valinciuses' relied on the advice of present counsel to conclude that the release applied only to the HRT litigation and not the retained sponge case. **See** Brief of Appellants, at 2 (stating that HRT settlement package was given to Attorney Ennis for review). Unfortunately, counsel either failed to read the release in full, or was unaware of the import of **Buttermore** and its impact on his clients' ability to pursue the retained sponge litigation.

from liability. The trial court ultimately denied Dr. Donahue's petition for summary judgment.

On appeal, this Court relied on the plain language of the release to conclude that it did not apply to Dr. Donahue. In response to Dr. Donahue's argument that the trial court erred by admitting extraneous evidence of intent, the Court stated as follows:

> While **it is clear to this [C]ourt that the language of the release did not discharge [Dr. Donahue] from liability**, [Dr. Donahue], nonetheless, urged the [trial] court to adopt his interpretation. Therefore, in order to ascertain the intent of the parties, the court deemed it necessary to consider the circumstances surrounding the release, the situation of the parties, and the nature of the content of the agreement. It was reasonable for the court to look to sources other than the contract for clarification. The court did not abuse its discretion in allowing affidavit and deposition testimony of the attorneys who drafted the releases.

**Martin**, 698 A.2d at 617 (emphasis added). The Valinciuses argue that the above-quoted language provides support for their claim that surrounding circumstances and intent of the parties should have been considered by the court in the instant matter. We disagree. The **Martin** Court clearly found that the plain language of the release was unambiguous and discharged only the named parties, and that extrinsic evidence was not necessary to ascertain the parties' intent. Accordingly, the Court's statement that the trial court did not abuse its discretion in considering extraneous evidence was, essentially, *dicta* and is not controlling here.

- 14 -

The Valinciuses also assert that the trial court erred in relying on *Buttermore* and its progeny because there was "no specific event to release." The Valinciuses' basis for this claim appears to be a passing reference to a "given event" in the case of *Taylor v. Solberg*, 778 A.2d 664 (Pa. 2001). The isolated quotation cited by the Valinciuses provides as follows: "When the parties to a release agree not to sue each other or anyone else for a given event, this can effect a discharge of others who have not contributed consideration for the release." *Id.* at 667. From this, the Valinciuses extrapolate that any valid release must be related to a specific event. This argument is based on an absurdly narrow and literal reading of the language used by the Supreme Court and must be rejected outright. Simply stated, there is no requirement in the law of this Commonwealth that a release must be predicated on a specific "event," such as a car accident, to be effective.

For the foregoing reasons, the trial court did not err in relying on *Buttermore* and its progeny to discharge the Appellees from liability in the Valinciuses' medical malpractice action.[3]

_____

[3] Although we recognize that **Buttermore** compels our affirmance, we believe its application here to be at odds with the underpinnings of tort law. "Two basic policies underlie theories of tort liability: deterrence of harm-causing conduct and compensation of persons injured by such conduct." 1 Summ. Pa. Jur. 2d Torts § 1:1 (2d ed.). Similarly, the object of awarding damages in tort actions is "to give compensation, indemnity, or restitution

*(Footnote Continued Next Page)*

The Valinciuses next assert that the trial court erred in considering the Fact Sheet from the HRT lawsuit to find a causal link between the HRT drugs and Mrs. Valincius' breast cancer.[4] We find that the Valinciuses have waived this issue for two reasons. First, the Fact Sheet was first introduced into the proceedings at the deposition of the Valinciuses' daughter. No objection was made to the introduction and use of the document, despite extensive questioning based on its contents. "[I]n order for a claim of error to be preserved for appellate review, a party must make a timely and specific objection before the trial court at the appropriate stage of proceedings; the failure to do so will result in a waiver of the issue." *Kaufman v. Campos*, 827 A.2d 1209, 1212 (Pa. Super. 2003). As the Valinciuses did not lodge an objection at the time of their daughter's deposition, this claim is waived.

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

for harms[,] to determine rights[, and] to punish wrongdoers and deter wrongful conduct." *Id.* § 9:1, citing Restatement (Second) Torts § 901.

Here, Appellees benefit from a release to which they were not parties and for which they provided no consideration. The appellee-doctors left a sponge in Ms. Valincius that caused her years of pain. However, they benefit from the release and are neither deterred from their harm-causing conduct nor required to compensate Ms. Valincius for her harm. In effect, they receive a windfall. While we see no principled way to distinguish **Buttermore** and its progeny, our Supreme Court may wish to consider an exception.

[4] The Fact Sheet states: "Information provided by plaintiff within the fact sheet will only be used for purposes related to this litigation and such information will not be disclosed outside this litigation without plaintiff's written consent." Plaintiff's Fact Sheet, 11/4/04, at 1. Based on this language, the Valinciuses argue that the information contained in the Fact Sheet should not have been introduced in the instant matter.

- 16 -

Second, the Valinciuses have waived this argument for failure to develop their appellate argument or to cite any authority whatsoever for their claim. "When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived." ***Commonwealth v. B.D.G.***, 959 A.2d 362, 371-72 (Pa. Super. 2008) (en banc). Here, the Valinciuses' argument is one paragraph long and cites no legal authority. Accordingly, the issue is waived.

Finally, the Valinciuses assert that this Court should apply New York law in deciding the case. This argument is based on language contained in the HRT release providing that the document shall be construed according to the laws of the State of New York. Release, 11/30/11, at ¶ N. This issue is also waived. "[I]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." ***Steiner v. Markel***, 968 A.2d 1253, 1257 (Pa. 2009). Here, the Valinciuses did not present this argument in the lower court or in their Pa.R.A.P. 1925(b) statement. Accordingly, this claim is waived.

For the foregoing reasons, we are constrained to agree with the trial court that the HRT release bars any claims the Valinciuses may have against Dr. Weiner and the other appellees.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/23/2015